(No. 15526.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ADOLPH E. KRATZ, Plaintiff in Error.

*Opinion filed February 19, 1924.*

1. CRIMINAL LAW—*what does not show money was obtained by means of confidence game.* That the defendant obtained the money of the prosecuting witness by means of the confidence game is not established where there is evidence that she advanced or loaned her money to the defendant not because she had confidence in him, but because, upon investigation, she considered it a good investment, and where there is no evidence that the defendant used any fraudulent means, instrument or device to obtain her confidence.

2. SAME—*when false representations, alone, do not prove defendant guilty of confidence game.* A defendant may be convicted of the confidence game even though his dealings with the prosecuting witness assumed the form of a business transaction, but mere false representations concerning the assets and liabilities of his business, for the purpose of securing a loan from the prosecuting witness, do not alone prove the defendant guilty, where there is a reasonable doubt as to his intention to swindle.

3. SAME—*when Supreme Court must reverse judgment on the evidence.* It is the duty of the Supreme Court to determine the question whether or not, upon the evidence, there is a reasonable doubt of the defendant's guilt, and if so, the verdict and judgment of the trial court cannot stand.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding.

EDWARD B. ZAHN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

A judgment of conviction was entered in the criminal court of Cook county against Adolph E. Kratz for obtaining money from Marie P. Witte by means and by use of

the confidence game, and he has sued out this writ of error to review the judgment.

During the year 1921 plaintiff in error (hereinafter called defendant) conducted a store at 2574 Lincoln avenue, in Chicago, for the sale of phonographs, phonograph records, books, stationery, toys, magazines, postage stamps and philatelic supplies. He also conducted a printing shop at 2566 Lincoln avenue, in the same city, where he published a magazine devoted to philately and filled the orders he received for job printing. Early in the year 1921 he organized a corporation known as Adolph E. Kratz & Co. and conducted the business of the store and printing shop in its name. The complaining witness, Marie P. Witte, met the defendant in May, 1921, through her husband, who had become acquainted with him at their lodge. In May, 1921, defendant told the husband of the complaining witness that he needed money for his business and requested a loan of $500. The husband said he would have to ask his wife about it and went home and informed his wife of the request. She loaned the defendant $500. Another loan of $500 was made to defendant by her on May 28. She testified to the effect that when her husband first told her of defendant's request for a loan he told her of the nature of defendant's business and about the stock of goods in the store, and that she said to her husband, "I want to go there and see it myself before I ever invest money." She also testified in these words: "I wanted to look it over before I invested my money, and I went over with my husband and I did look it over. I saw the German stock there. * * * A couple of toys I saw, and then I invested money." Her husband testified that her first visit to the store was at the time she made the second loan of $500. Both complaining witness and her husband state, however, that defendant showed them the stock of merchandise and fixtures in the store, including a linotype in the printing shop; that defendant stated he had just gotten the linotype machine and

paid over $5000 for it, and that he had about $15,000 of his own money in the business, all of which had been paid for. Complaining witness further testified that defendant told her there were no mortgages on the property and that she could have her money back in thirty days if she needed it. About the last of May, aforesaid, defendant gave her husband a position in the store, to work there until the last of August. In June following, the prosecuting witness loaned defendant another $500, $500 more in August, and at another time $100,—in all $2100. She received certificates of stock in Adolph Kratz & Co.,—one in her own name and one in the name of her husband,—for 1600 shares of stock of the par value of $1600, dated June 6, 1921, and two judgment notes of the company dated September 20, 1921, one for $500 and the other for $400. The latter note was to cover $100 interest on the money advanced and $300 due the husband as salary. Both the complaining witness and her husband further testified that at the time the money was loaned in August, defendant said he had around $600 coming from the Lincoln Park Chapter for printing. Before the $500 was loaned in August, one Straube, then manager of defendant's printing shop, and defendant, talked to the husband and explained the necessity of raising more money at once for the business, and it was agreed that Straube and defendant visit the complaining witness and solicit another loan. They did so. The complaining witness testifies that Straube said at the time of that visit that he would re-pay the money, in case the defendant did not do so, in two weeks.

The linotype machine in the printing shop was covered by a chattel mortgage, dated April 27, 1921, for $3410. The printing press there, which was worth $1950, was owned by Louis M. Schwartz, who was in charge of the shop until August, 1921. Schwartz was paying for the press by monthly installments and had paid about $600 or $700 at the time he left the business in August. The contract

between him and defendant was that Schwartz was to pay for the press, and that when he paid for it he would receive stock of the company for the amount he had paid. Schwartz took a judgment note of the company for $800 for his interest in the company when he left the business. A balance sheet prepared by one of the employees of the company and introduced in evidence by the prosecution shows that the company on June 1, 1921, had assets totaling $36,318.16 and had an indebtedness of $13,702.34.

Over the objections of defendant a number of witnesses were allowed to testify that they had loaned or invested money in defendant's business under circumstances similar to the transactions between the prosecuting witness and defendant. Defendant in his testimony positively denied that he told or represented to the complaining witness or her husband that all the property in the store and print shop was paid for and that he had told her there were no mortgages on the property.

The evidence in the record tends to show that the prosecuting witness did not rely upon the statements made to her by defendant to secure the loans, or any one of them, as to the character and the amount of property possessed or as to its value. Her own testimony shows that she was not willing to loan her money to him on the faith of his representations to her and her husband's statements to her concerning the business, but that she insisted on making a personal investigation before she loaned any money to him. She also had the promise of the manager of the printing shop that he would re-pay her the $500 advanced in August, in case the defendant did not re-pay it, within two weeks. She had experience in business, and the record tends to show that she advanced her money not because she had confidence in defendant and his representations to her but because her own investigation tended to assure her that the business was sound. There is a total lack of proof in the record of any intent on the part of defendant to defraud

or swindle the prosecuting witness even if we assume there is sufficient proof to show that he obtained her confidence. Assuming that defendant induced the prosecuting witness to lend her money by making false representations concerning the assets and liabilities of the business, still, if he did not intend to swindle her he is not guilty of the confidence game. It is true that if the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction, (*People* v. *Keyes,* 269 Ill. 173,) but there must be an actual swindling operation. There is no evidence in this case, as there was in the *Keyes case,* that the defendant did not intend to keep the promises made to his alleged victim and that he falsely pretended that he would do so for the purpose of procuring the money or loans. We held in the *Keyes case* that if the defendant entered into the contract in good faith, with the full intention of performing it, he would be guilty, simply, of the breach of an ordinary contract and not of the confidence game. In this case it must be held that there was a reasonable doubt, at least, on the proposition whether or not defendant intended to swindle the prosecuting witness when he procured the loan, because of the lack of evidence to prove that such was his intent. It is the duty of this court to determine the question whether or not there is a reasonable doubt of defendant's guilt, and if so, the verdict and judgment of the trial court cannot stand. *People* v. *Koelling,* 284 Ill. 118.

The history of this entire transaction tends strongly to show that defendant and the prosecuting witness were dealing at arm's length and on equal footing. The evidence does not show that because of any fraudulent means, instrument or device the prosecuting witness was induced to repose confidence in defendant or that he intended to swindle her at the times he procured the loans.

The judgment of the criminal court is reversed.

*Judgment reversed.*