THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AL. L. SCHNEIDER, Plaintiff in Error.

*Opinion filed October 22, 1927.*

1. CRIMINAL LAW—*what is a false pretense.* Any misrepresentation of a past fact, such as a misrepresentation of one's title or ownership, when knowingly made to induce another to part with his property, is a false pretense.

2. SAME—*what is necessary to constitute the confidence game.* The confidence game statute does not cover business transactions between parties on an equal footing even though there is such fraud or misrepresentation as will subject one of the parties to a civil or criminal action, but to constitute the offense it must appear that as an element of the transaction the defendant obtained the confidence of his victim by some false representation or device and swindled him.

3. SAME—*when defendant is not guilty of confidence game.* A defendant is not guilty of the confidence game where the evidence shows that the money out of which he is charged to have swindled his victims was obtained by selling them secret formulas notwithstanding he had sold the same formulas to another but denied

having done so, and where the parties with whom he was dealing were familiar with the business to which the formulas pertained and there is no showing that the defendant employed any trick or device to obtain the confidence of his victims.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WORTH E. CAYLOR, Judge, presiding.

OTTO SCHUSTERMAN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Al. L. Schneider, (herein called the defendant,) was convicted in the criminal court of Cook county under the second count of an indictment charging that on February 18, 1926, he did unlawfully, fraudulently and feloniously obtain from the Haag-Bigler Chemical Company, a corporation, a large amount of money, goods and personal property by means of the confidence game, etc. Motions for a new trial and in arrest of judgment were overruled and he was sentenced to the penitentiary in accordance with the verdict of the jury. He prosecutes this writ of error.

The evidence for the People was in substance the following: The defendant was the owner of certain secret formulas for water-proofing, fire-proofing and rust-proofing any material and for making any material heat-resisting and acid-resisting. On December 29, 1924, he entered into a contract with Walter A. Gause, who, in consideration of the agreements and covenants entered into by the defendant, was to exploit defendant's formulas, and for that purpose was to organize a corporation having 800 shares of common stock, no par value, and 250 shares of preferred stock of the par value of $100. The agreement provided

that upon the organization of the company the defendant was to be employed as a chemist for a period of not less than six months, at a salary not less than $35 per week and traveling expenses. Gause was to have the 100 shares of common stock to be issued to the defendant, to be held by him as trustee to secure him for any advances made to the defendant, and the defendant was to receive a royalty of two and one-half per cent of the net sales of the product made from his formulas. The defendant's covenants and agreements were, that he would transfer his formulas to Gause and all other formulas that he might discover or develop during the course of their agreement; that he would instruct him in the matter of preparing, mixing and using the same; that he would, upon demand, furnish him or his assigns all details of all new formulas that he might discover or work out, and furnish the correct method of mixture and preparation of the same and satisfactorily demonstrate the same to him. He covenanted and agreed that the formulas were his own property and that no other person had any interest therein, that they had not been in use by any other person prior to the agreement, and that he would devote all his time and efforts to the use and benefit of Gause and the corporation. It was mutually agreed that the contract between them was contingent upon the condition that the formulas would fully comply with such reasonable tests as Gause might give them; that the product could be manufactured commercially; that the representations with reference to the formulas made by the defendant were true, and that in the event of their not proving so, Gause, at his option, might at any time terminate the agreement.

After the contract was signed by Gause and the defendant, Gause organized the Tyte Manufacturing Company of New York and paid the defendant $35 per week until April 25, 1925. The defendant also received $250 in royalty from the company. In April, 1925, Gause left for

England. By power of attorney he authorized Harry T. Evans to dissolve the Tyte Manufacturing Company and to handle all of Gause's business. Gause delivered the formulas which the defendant had delivered to him, to Evans. After Gause had departed for England, the defendant, claiming that Gause had abandoned the contract, tried to sell the formulas to the Buffalo Specialty Company. In July, 1925, he learned that the formulas had been transferred to Evans by Gause. The defendant complained to Evans that he had not been treated fairly by the Tyte Manufacturing Company or by Gause, and a new agreement was entered into between Evans and the defendant on July 17, 1925. In consideration of $150, which was paid to the defendant by Evans out of the funds of the Tyte Manufacturing Company in his possession, the defendant transferred to Evans all his interest in the formulas he had sold to Gause, all his interest in the contract between himself and Gause and all his interest in the Tyte Manufacturing Company. By the contract the defendant was to work for Evans for $35 per week, with the understanding that should the business develop profitably his salary would be increased to such extent as should seem fair and reasonable to Evans. Should a corporation be organized to conduct the business, Evans was to transfer or cause to be transferred to the defendant, without cost or expense to him, five per cent of the capital stock of the corporation. Both Evans and the defendant were to give their time and efforts to the business if the same should become profitable. Evans was to render reasonable financial assistance to the development of the business, with the understanding that should it appear to him at any time that the business was becoming a losing or unprofitable venture, he had the right to cease advancing money for the developing of the business and to cease the payment of the salary of the defendant. Evans did not see the defendant again for three weeks after he paid him the $150 for the formulas and $35 per

3-7—18

week for three weeks' work. He did not discharge the defendant from his employment, as claimed by the defendant.

On January 29, 1926, the defendant entered into a contract with Kay H. Murray and the Haag-Bigler Chemical Company concerning his secret formula for water-proofing and weather-proofing. The contract provided that a co-partnership, joint stock company or corporation, with the firm name to be agreed upon, should be formed by the defendant, Murray and the Haag-Bigler Chemical Company as three respective units and with equal one-third interests. The purpose and business of the organization were stated to be, "to perfect, manufacture, market and sell a certain secret formula of water-proof and weather-proof product originated and developed by Mr. Al. L. Schneider and heretofore his sole right and property." The defendant's agreement in the contract is, that he will assign and deliver over to the other parties said formula and prove to their satisfaction that the same is successful and will fully serve the purpose intended; that the defendant will further develop and perfect his other related chemical products, such as cleaners and rubber substitutes, etc., and that all such other products will become the property and business of the organization, to the mutual and equal profit of all concerned. The Haag-Bigler Chemical Company agreed that it would forthwith deliver a check or funds to the amount of $485, $100 thereof to be paid in advance, the remainder to be placed in escrow, to be paid promptly to the defendant as further consideration when satisfactory proof should be made that the water-proof product would serve its purpose, and the company was to have reasonable time to examine, apply and demonstrate the product, such time to extend to February 6, 1926. The company, then engaged in a similar line of business, further agreed that it would not in any way enter the market with a water-proof or similar product, or in any way substitute a competitive product for the product aforesaid or for their later adopted products,

and to keep all information imparted to it forever confidential. It was further stipulated in the contract that each party to it would serve the interests of the organization to the best advantage in their various and most qualified capacities, and without expense or salaries, other than commissions and profits on their sales, until such time as agreed to and authorized. Expenses in the immediate progress of the company were to be paid out of the profits realized, and no member of the organization should be authorized, except in writing, to create liabilities or obligations until the organization was fully and finally perfected.

On the day the contract was signed the Haag-Bigler Chemical Company gave the defendant its check on the State Bank of West Pullman for $100, which was endorsed and collected by him as the initial payment according to the contract. On February 8, 1926, the chemical company, after having tested the product and formula, delivered to the defendant its check for $385, which he collected as the final cash consideration provided for by the contract.

Kay H. Murray, who is engaged in the business of marketing new products and who is a licensed lawyer, Vern W. Haag, president of the Haag-Bigler Chemical Company and a chemist who makes tests of chemical products, and Harry E. Bigler, part owner of the chemical company and a manufacturer of chemical products, testified for the People substantially as follows: The defendant claimed to have a secret formula for making a water-proofing compound which he had tested, and that he also had other formulas. On January 23, 1926, he met Murray, Bigler and Haag and they talked about the formula. He told them that his product could be made for about forty cents per gallon, which was much cheaper than any other water-proofing compound on the market. He proposed to sell a one-third interest in that formula, keep one-third for himself and set aside one-third for the sales efforts. They asked him if he had sold any part of the formula before that time, and

he replied to them that he had not and represented that he was the originator of it.  On January 29, 1926, they had another meeting, and the defendant demonstrated to them his product for water-proofing.  He showed them samples of silk, canvas, linen and other materials which had been treated with his compound.  He told them about a diving suit test that had been made on the Pacific coast, and that canvas covered with his compound would make desirable diving suits.  After they had made experiments with the compound, Haag and the other two witnesses found that it would not dry quick enough to be of practical value, and the defendant was informed of this, and at their suggestion he went to their plant for three weeks to work out a remedy or to find a practical dryer for the product.  He told them that it was a question as to the kind of a dryer that should be used in the compound that would quicken the process.  They later sold a small quantity of the compound to five different concerns, but the materials treated with the compound would not dry satisfactorily and were gummy and sticky after eight days of drying.  The defendant and one Freidenberg went to Detroit, Michigan, and obtained a number of orders from the Kresge stores.  Bigler in his testimony said concerning the formula, "We thought it was a good proposition, and that is the reason we invested our money into it."  He further stated that they knew at the time they gave Schneider the check for $385 that the formula did not dry as the defendant claimed it would; that they did not investigate to find out if any-one else owned the formula, and expressed his opinion that the defendant's product was a very good one for raincoats.  Murray testified that the defendant had been experiment-ing at the Haag-Bigler Chemical Company's factory for a week before they gave him the final check for $385; that he made tests of the product by putting it in a bucket of water in the bottom of the lake; that he painted a nail with it and put the nail under the furnace and it did not rust,

and that he (the witness) had confidence in the article. Haag testified that the formula in itself was very good; that the luster was very good but that the drying of the article was not quick enough to be practical. He further stated if the article would dry within six or eight hours it would be classed O. K.; and he also stated that they quit manufacturing the compound on the day Harry T. Evans called them on the phone and informed them the defendant had sold his formula to him and that they must stop working the formula.

The foregoing is substantially all the material evidence for the People. We do not deem it necessary to set out any of the evidence offered by the defendant in his defense, for the reason that the evidence for the People clearly shows that the defendant is not guilty of the confidence game, as charged in the indictment. If he committed any offense at all it was that of obtaining money by false pretenses, in violation of paragraph 253 of the Criminal Code, which provides that whoever, with intent to cheat or defraud another, designedly, by color of any false token or writing or by any false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money, personal property or other valuable thing, shall be fined in a sum not exceeding $2000 and imprisoned not exceeding one year, etc. Any misrepresentation of a past fact by a party, knowingly made to induce another to part with his property, is a false pretense. The misrepresentation made by the defendant in this case, if one was made by him, was as to his title or ownership of the formula sold by him to Murray and the Haag-Bigler Chemical Company. Such a misrepresentation, if knowingly made, is a false pretense within the meaning of the statute, and this court has so declared. (*Keyes* v. *People,* 197 Ill. 638.) Under an indictment charging the obtaining of money or property by the confidence game, proof, merely, that the defendant is guilty of obtaining money

by false pretenses does not sustain the charge. It must further appear that as an element of the transaction the defendant obtained the confidence of his victim or victims by some false representation or device and swindled them. (*People* v. *Peers,* 307 Ill. 539.) The statute does not cover business transactions between parties on an equal footing, even though there is such fraud or misrepresentation as will subject one of the parties to a civil or criminal action. (*People* v. *Turpin,* 233 Ill. 452; *People* v. *Santow,* 293 id. 430.) Murray, Bigler and Haag were cautious business men of long standing in their particular occupations or professions. They investigated the defendant's formulas fully. They found that there was merit in them, and they so testified. They did not rely upon the judgment or statements of the defendant as to the merits of his product. There was just one thing lacking in the product to make it very valuable, according to the testimony of the State's witnesses, and that was a dryer that would dry it in proper time. They hoped and believed,—and so did the defendant believe,—that they could find a dryer that would make the product practical and valuable. The parties who dealt with the defendant in this case did rely on the truthfulness of the defendant's statement that he owned the formulas and had not sold them to others, but such proof is not sufficient in this case to establish the confidence game. "The confidence game statute was designed to reach that class of offenders known as 'confidence men,' who practice swindling schemes as various as the mind of man is suggestive, upon unwary victims. The gist of the crime is the obtaining of the confidence of the victim by some false representation or device." (*People* v. *Peers, supra.*) The evidence in this case fails for want of a showing that the confidence of the victims was obtained by some such representation or device.

The judgment of the criminal court is reversed.

*Judgment reversed.*