## No. 15,129.

BOMARETO *v.* THE PEOPLE.
(137 P. [2d] 402)

Decided May 3, 1943.

Mr. F. W. Harding, Mr. Morton M. David, for plaintiff in error.

Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. James S. Henderson, Assistant, for the people.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

A prosecution under section 222, chapter 48, '35 C.S.A. —Confidence Game. It reads: "Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property by means of or by use of brace faro, or any false or bogus checks, or by any other means, instrument or device, commonly called confidence games, shall be liable to indictment, and on conviction shall be punished by imprisonment in the penitentiary, for any term not less than one year, nor more than twenty years." Since in the course of our discussion we shall have occasion to cite Illinois Supreme Court decisions, attention is called to the fact that we have said the Illinois statute is "identical in its terms with section" 222. *Lace v. People,* 43 Colo. 199, 95 Pac. 302.

November 3, 1941, an information was filed charging, that, September 4, 1941, defendant (plaintiff in error) did "wilfully, unlawfully and feloniously obtain from the Greeley Cash Auction Market, a partnership consisting of Fred Searl and Harvey D. Greenwood, cattle and livestock of the value of $539.49, of the property of the said Greeley Cash Auction Market, by means of and by use of the confidence game, contrary to the form of the statute," etc. Defendant suffered judgment of conviction and sentence of confinement in the penitentiary.

It appears that Searl and Greenwood had been operat-

ing the Greeley Cash Auction Market from May 10, 1941, and that its business consisted in conducting on each Thursday an auction sale of livestock. The terms of sale, as announced, were for cash; that defendant, from the day of the opening of said auction market until September 4, 1941, regularly attended the weekly sales and purchased livestock on each occasion; that after defendant made purchases as he desired he would be supplied with sales slips indicating the transaction, which he would present to an office clerk for computation, and who, upon receipt of defendant's check covering, would issue to him a bill of sale for the property purchased. It further appeared that more often than otherwise defendant's checks would be returned by the bank on which they were drawn, marked "short"; that preceding the time of the next auction, and usually on the day thereof, defendant would call at the office of the auction company, and, employing cash, checks of third parties made to his order, or by certified checks by the bank on which he drew checks, he would discharge his obligation of the previous Thursday's auction. September 4, 1941 (Thursday), defendant appeared on the scene just prior to the commencement of the auction, where a check in the sum of $494.77 issued by him to the auction company the previous Thursday (August 28), marked "short," awaited his attention. By third party checks, a certified check for $75.00, and credit for a hog purchased the preceding Thursday, and which he returned, he paid his indebtedness and had a credit balance of $86.16. He then repaired to the auction ring and made purchases in the sum of $625.65, in discharge of which his credit of $86.16 was applied, and for the balance, $539.49, his check was taken. That check, marked "short," was returned by the bank on which it was drawn, and became the basis of this prosecution.

There was testimony to the effect that on the day in question, defendant was told that, commencing that day, his checks must be "good," and that the method

of doing business theretofore obtaining would no longer be tolerated. There was testimony contrary to the facts of any such discussion. One of the partners testified that before he accepted the check he endeavored to communicate with the bank by telephone, but that since already it was past five o'clock he was unable to talk to anyone in the bank. The other partner said that defendant's assurance in that regard was such that they thought that "maybe this time the check was good." There is no doubt that at all times while defendant was doing business with the auction company, he had an account with the bank on which he drew the several checks given the company. Assuming that defendant did assure the payee of his check that it was "good this time," such assurance was not more than was implied on each occasion when he drew other checks which were returned "short." That the partners were "unwary victims" reasonably may not be claimed. Not only had they been doing business with defendant in the manner indicated for months, the record further shows that for a long period before Searl and Greenwood became partners in business, one of them had been conducting the same business, and through that period defendant patronized the auction, when like loose methods prevailed. With full knowledge thereof, and having it within their power to refuse defendant's check and decline to deliver the livestock he had bought in this instance, they chose finally to trust him as before. We cannot think that the partners were deceived in the sense that they were unaware of the business risk potentially involved. Defendant's check of September 4, 1941, was the same kind of a token the partners had been accepting through a long course of dealing. "Where the confidence of the injured party is honestly obtained through a course of regular business dealings, and the one in whom confidence is reposed breaches that confidence to the injury of the one reposing it, the statute defining and punishing the obtaining of money by means

and by use of the confidence game is not violated." *People v. Snyder,* 327 Ill. 402, 158 N.E. 677. "The statute does not cover business transactions between parties on an equal footing, even though there is such fraud or misrepresentation as will subject one of the parties to a civil or criminal action. *People v. Schneider,* 327 Ill. 270, 158 N.E. 448. Drawing a "short" check on a bank if "with intent to defraud," is in itself an offense (misdemeanor), but here the prosecutor did not resort to that section. '35 C.S.A., c. 48, §313. "Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and then abusing the confidence so obtained, a conviction for the confidence game cannot stand." *People v. Snyder, supra.* Defendant's requested instruction for acquittal should have been given.

██ Although the conclusion on the point above discussed disposes of the prosecution involved, we are disposed to consider the challenge made to instruction No. 7, given by the court. The situation affords opportunity for a declaration on the importance of the intent of defendant in confidence-game prosecutions. The instruction reads: "You are instructed that if you believe and find from the evidence, beyond a reasonable doubt, that the defendant, * * *, by means of and by use of a false and bogus check induced Fred Searl and Harvey D. Greenwood to part with certain cattle and other livestock of the value of $539.49, of the property of the said Fred Searl and Harvey D. Greenwood, and to deliver the same to the defendant, * * *, in exchange for said check, then you should find the defendant guilty as charged in the information." The criticism is that the instruction omits the requirement that "intent to defraud" is a necessary element. We think the instruction is open to the weakness stated. "Before a defendant can be found guilty of the charge of the confidence game the intent to swindle the complaining witness must be proved beyond a reasonable doubt." *People v. Heinsius,*

104

319 Ill. 168, 149 N.E. 783. See, also, *People v. Kratz*, 311 Ill. 118, 142 N.E. 561; *People v. Massie*, 311 Ill. 319, 142 N.E. 503. Having undertaken to state the case hypothetically, it was incumbent on the court to include all the essential elements. Other instructions given do not cover the point.

Let the judgment be reversed, pursuant to which the trial court will proceed in the light of this opinion.