No. 15,242.

Olde v. The People.
(145 P. [2d] 100)

Decided January 10, 1944.

Mr. PHILIP HORNBEIN, Messrs. MOSKO & SLATKIN, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, to whom we shall hereinafter refer as defendant, and one Earl Hicks, were jointly informed against for unlawfully and feloniously conspiring together to unlawfully, fraudulently and feloniously obtain divers sums of money from the public funds of Jefferson

county "by means and by use of the confidence game." In a separate trial defendant was found guilty, and he prosecutes this proceeding in error to review the judgment of conviction and sentence which followed, contending, inter alia, that the evidence was insufficient to support the verdict.

Defendant operated a gasoline filling station and general store at Evergreen. Hicks was a road overseer employed by Jefferson county. Acting within his admitted authority and discretion, Hicks currently purchased from defendant a portion of the gasoline, oil, distillate, tires and other accessories used in the operation of the road trucks and equipment of the county. These purchases were handled as charge transactions and periodically defendant submitted his account to the county commissioners for payment. From time to time, without any authorization from the county commissioners, Hicks purchased from defendant's store other commodities, such as cigars, cigarettes, socks, gloves, etc., and also secured from defendant advances of cash, generally in small sums, which were used partly for Hicks' personal benefit and partly to purchase food and refreshments for members of the road crew working under him. By arrangement between Hicks and defendant the items of merchandise in the last category, as well as the cash so advanced, were charged to the county as gasoline, oil and the like and were so falsely designated in the vouchers, statements and claims presented to the county commissioners for payment. The precise extent in dollars and cents of these unauthorized transactions is not clearly shown by the evidence, but it is unquestioned that thereby Hicks and his men received the benefits of the purchases and advances and defendant the profit on the contraband merchandise wrongfully included in his padded accounts.

There was no evidence that either Hicks or defendant resorted to any fraudulent scheme to obtain the confidence of representatives of the county, nor was it proved

that defendant's accounts were allowed because the county commissioners reposed any special confidence in him. Rather, in so far as the records disclose, the claims were paid when in proper form and the thing that induced the commissioners to allow them was the representation of facts contained in the vouchers and statement of claims presented by defendant.

Since the controlling statute, section 177, chapter 48, '35 C.S.A., provides no punishment for a conspiracy to do any unlawful act, except such as would be felonies or misdemeanors if committed, to constitute the offense of conspiracy thereunder the unlawful objective act must also amount to a crime. *Lipschitz v. People,* 25 Colo. 261, 53 Pac. 1111. See, also, *Noble v. People,* 67 Colo. 429, 180 Pac. 562, and *Shimmel v. People,* 108 Colo. 592, 121 P. (2d) 491.

The objective offense herein upon which the people rely is the alleged violation of the confidence-game statute, section 222, chapter 48, '35 C.S.A. An essential element of such crime is a swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. *Lace v. People,* 43 Colo. 199, 95 Pac. 302, and *Wheeler v. People,* 49 Colo. 402, 113 Pac. 312. Not every fraud is a confidence game within the meaning of the statute. *Shepherd v. People,* 109 Colo. 582, 129 P. (2d) 104, and *Davis v. People,* 96 Colo. 212, 40 P. (2d) 968.

Recently, in the case of *Bomareto v. People,* 111 Colo. 99, 137 P. (2d) 402, quoting from *People v. Snyder,* 327 Ill. 402, 158 N.E. 677, 56 A.L.R., 722, wherein the statute involved was identical with section 222, supra, we expressed as controlling propositions that: "Where the confidence of the injured party is honestly obtained through a course of regular business dealings, and the one in whom confidence is reposed breaches that confidence to the injury of the one reposing it, the statute defining and punishing the obtaining of money by means and by use of the confidence game is not vio-

lated." * * * "Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and then abusing the confidence so obtained, a conviction for the confidence game cannot stand." Quoting from *People v. Schneider,* 327 Ill. 270, 158 N.E. 448, the opinion in *Bomareto v. People, supra,* recites: "The statute does not cover business transactions between parties on an equal footing, even though there is such fraud or misrepresentation as will subject one of the parties to a civil or criminal action."

The Attorney General admits that if the foregoing pronouncements "are to state the law pertaining to prosecutions for confidence game in this jurisdiction, it is concededly difficult to argue in favor of the validity of the instant judgment," but suggests that the acceptance of the Illinois cases above cited as precedents in *Bomareto v. People, supra,* in effect overrules a line of earlier decisions of this court, particularly *Stewart v. People,* 86 Colo. 456, 283 Pac. 47; *Roll v. People,* 78 Colo. 589, 243 Pac. 641; *Powers v. People,* 53 Colo. 43, 123 Pac. 642, and *West v. People,* 60 Colo. 488, 156 Pac. 137. We are in accord with the initial observation of the Attorney General, and so conclude the judgment must be reversed, but disagree with the suggestion that the decision in the Bomareto case imported any new or different rule into this jurisdiction.

While on its face our opinion in the case of *Stewart v. People, supra,* seems to uphold a conviction for attempting a confidence game upon the mere proof of an attempt to obtain money by a swindling scheme, the supporting authorities therein cited, which are those last specifically mentioned above, show that historically in this state the crime of confidence game transpires only when the confidence of the victim first is obtained by some fraudulent scheme, trick or device and then is breached in obtaining the money or property of the victim. Thus in the Roll case, supra, the confidence of the victim, later violated, was obtained through church affili-

ations, nursed along through fake telephone calls, and in the Powers case initial confidence was studiously developed by the conspirators through the use of false personages and devices.

The case of *West v. People, supra,* had its inception in a fake horse race, a typical and favorite enterprise of confidence men, wherein the confidence of the unwary victim was obtained by the display and use of the complicated paraphernalia ordinarily attendant to wagering on such contests.

As has been mentioned, the statute of Illinois defining the crime of confidence game is identical with that of Colorado, and likely was the source of our act. An examination of the opinions in cases of this nature reaching our court, beginning with *Lace v. People, supra,* one of the earliest, and continuing down to *Bomareto v. People, supra,* the latest, discloses a frequent citation of, and general adherence to, the decisions of the Supreme Court of Illinois, so the opinion in the Bomareto case sets no new precedent in this field, nor do the rules therein announced deviate from those previously established.

The evidence here simply shows that defendant conspired to, and did, make designated misrepresentations of existing conditions in a business transaction by which money of the county was obtained unlawfully, and he may thereby have rendered himself liable to prosecution and punishment for the substantive crime of obtaining money by false pretenses, or conspiring so to do (See, *Johnson v. People,* 110 Colo. 283, 133 P. (2d) 789); but there is in this record no evidence to support the charge contained in the information filed against him, and of which he was convicted.

The judgment is reversed.

Mr. Justice Burke dissents.