The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Waldo Paul MUNIZ, Defendant-Appellee.
The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Thomas Joseph MONTOYA, Defendant-Appellee.

Nos. 82SA297, 82SA251.

Supreme Court of Colorado, En Banc.

Aug. 22, 1983.

Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Brian Holland, Deputy State Public Defender, Denver, for defendant-appellee Muniz.

Jeralyn E. Merritt, Denver, for defendant-appellee Montoya.

QUINN, Justice.

In this consolidated appeal[1] the People, pursuant to C.A.R. 4(b), appeal from separate judgments entered by the district court in postconviction proceedings under Crim.P. 35. The court vacated the 1964 convictions of two defendants, Waldo Paul Muniz and Thomas Joseph Montoya, resulting from their guilty pleas to the crime of conspiracy to commit burglary. Because the pleas were accepted in contravention of the requirements of the 1964 version of Crim.P. 11, we affirm.

## I.

On October 15, 1964, an information was filed in the Denver District Court charging the defendants with burglary,[2] conspiracy to commit burglary,[3] larceny,[4] conspiracy to commit larceny,[5] receiving stolen property,[6] and conspiracy to receive stolen property.[7] Attorneys were appointed for each of the defendants. On October 28, 1964, the defendants first appeared before the Denver District Court for a joint arraignment.[8] The court commenced the arraignment by asking Montoya's attorney whether he would waive the reading of the information. The attorney responded "Yes," and indicated that his client would plead guilty to the charge of conspiracy to commit burglary in exchange for the dismissal of the remaining counts. The attorney for Muniz also waived the reading of the information and concurred in the proposed disposition. The court then jointly advised the defendants that they had a right to a trial, to have witnesses testify on their behalf, and to the assistance of counsel. The court also informed the defendants of the potential sentence for the charge. After receiving negative responses from both defendants as to whether anyone was forcing them to plead guilty and whether they had any questions of the court, the court accepted the guilty pleas. At no time did the court inquire of the defendants as to their understanding of the crime, nor did it endeavor to explain the nature of the crime to them. On December 14, 1964, the court sentenced each defendant to an indeterminate term at the state reformatory.

Subsequently, after having served their sentences, each defendant filed a Crim.P. 35(c) motion requesting that the court vacate the guilty pleas. Among the grounds

---

1. Although these two cases were filed separately, they raise virtually identical issues and center upon the adequacy of a single providency hearing. We have therefore elected to consolidate the cases.

2. C.R.S. '53, 40-3-6.

3. C.R.S. '53, 40-7-36. This count read as follows:
   "SECOND COUNT: BERT M. KEATING, District Attorney in the name and by the authority of the People of the State of Colorado, further informs the Court that on 8th day of October, A.D. 1964, at the City and Couty [sic] of Denver, State of Colorado, THOMAS JOSEPH MONTOYA and WALDO PAUL MUNIZ did then and there unlawfully and feloniously agree, conspire and cooperate with each other and with some other person or persons to the District Attorney unknown, to do and to aid in the doing by them, or some one or more of them, at the

City and County of Denver, State of Colorado, of an unlawful act, namely, a felony against the building of ART MALNATI, INC., a corporation, which felony was the crime of burglary and is the transaction described in Count One of this information; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado."

4. C.R.S. '53, 40-5-2.

5. C.R.S. '53, 40-7-36.

6. C.R.S. '53, 40-5-12.

7. C.R.S. '53, 40-7-36.

8. The record indicates that at the time of this hearing Muniz was twenty years old and had a tenth grade education. The record does not reveal Montoya's age or educational level.

set forth in Muniz' motion, filed on April 2, 1982, was that the court accepted his guilty plea without explaining to him the nature or the elements of conspiracy to commit burglary. Montoya's motion, which was filed in 1980, also asserted that the court, at the 1964 providency hearing, failed to ascertain whether he understood the elements and nature of this crime. A hearing was held on Muniz' motion on May 21, 1982. The court inquired of the public defender representing Muniz as to Muniz' standing to bring the action. The public defender responded that the 1964 conviction was about to be used against Muniz in a sentencing hearing on an independent matter, and also that it would likely constitute the basis of a habitual criminal charge yet to be filed in Adams County. The court concluded that Muniz indeed had "standing" to challenge the guilty plea and vacated the plea because of the failure of the court "to explain the elements of the offense" during the providency hearing. Relying on its earlier ruling on Muniz' motion, the court also vacated Montoya's guilty plea after a hearing held on June 11, 1982. The record of that hearing indicates that Montoya's 1964 conviction was used as a predicate for a habitual criminal charge in a subsequent prosecution which resulted in a conviction and sentence which Montoya was then serving.[9] The People appealed each of the orders vacating the guilty pleas.

## II.

Although the principal issue in this case is whether the court complied with the controlling legal standards for accepting guilty pleas, we first address a preliminary contention of the People. The tenor of this contention is that the defendants' Crim.P. 35 claims were barred by their failure to challenge the convictions earlier. We find no merit in the People's position.

██ Crim.P. 35(c)(2) expressly recognizes that "[n]otwithstanding the fact that no review of a conviction of crime was sought by appeal . . . or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for post-conviction review upon the grounds hereinafter set forth." Included within the "grounds hereinafter set forth" is a claim that the conviction was obtained "in violation of the Constitution or laws of the United States or the constitution or laws of this state." Crim.P. 35(c)(2)(I). We have held that as long as a postconviction motion states a claim cognizable under Crim.P. 35 and the claim has not been fully and finally resolved in a prior judicial proceeding, the defendant is entitled to judicial review of the asserted error. *See, e.g., People v. Billips,* 652 P.2d 1060 (Colo.1982); *People v. Bradley,* 169 Colo. 262, 455 P.2d 199 (1969). Each defendant has stated a cognizable claim under Crim.P. 35(c) in that their respective motions assert facts which, if true, would invalidate their previously entered guilty pleas.[10] Also, the record shows that

---

**9.** In 1973 Montoya was convicted of second degree burglary and theft, and was adjudicated and sentenced as a habitual criminal based in part on his 1964 conviction of conspiracy to commit burglary. The judgments and sentences were affirmed by this court in *People v. Montoya,* 190 Colo. 11, 543 P.2d 514 (1975). In 1980 Montoya filed the Crim.P. 35 motion involved in this appeal. The district court initially dismissed the motion without an evidentiary hearing. In an unpublished opinion the court of appeals reversed, holding that the action was not barred by Montoya's earlier appeal of the habitual criminal adjudication. The court noted that on his first appeal Montoya's only challenge to the habitual criminal adjudication centered on his identification as the person who sustained the 1964 conviction. In the Crim.P. 35 proceeding, in contrast, the court of appeals noted that "he is asserting that his 1964 conviction of conspiracy to commit burglary is constitutionally infirm on grounds that he has not heretofore raised in any forum, and Crim.P. 35(c) provides him with an avenue of review entitling him to consideration of this motion." The court of appeals remanded to the district court for consideration of whether Montoya had established a present need for relief, and, if so, whether his Crim.P. 35 motion had merit. On remand, as indicated in the text, the district court determined that Montoya had a present need for relief by virtue of his current incarceration resulting from his adjudication as a habitual criminal and granted the Crim.P. 35 motion.

**10.** The People argue that Muniz' claim alleging the court's failure to ascertain whether he understood the nature of the charge was not raised in a timely fashion because this specific

the defendants' claims were not resolved at a prior postconviction or appellate proceeding.

■ Although there can be no real dispute about the defendants' compliance with the facial requirements of Crim.P. 35(c), the People nonetheless argue that the defendants' claims should have been dismissed as "stale." In resolving issues relating to the timeliness of postconviction claims, we have generally relied on the American Bar Association Standards Relating to Postconviction Remedies. *See People v. Hampton,* 187 Colo. 131, 528 P.2d 1311 (1974); *People v. Bucci,* 184 Colo. 367, 520 P.2d 580 (1974); *People v. Hubbard,* 184 Colo. 243, 519 P.2d 945 (1974). These standards provide that when a defendant has completed service of a sentence and belatedly seeks postconviction relief, he may be charged with the burden of showing a present need for such relief. Standards Relating to Postconviction Remedies § 22–2.4(c) (1978). A sufficient showing is made when the defendant establishes that he is "facing prosecution or has been convicted and the challenged conviction or sentence may be, or has been, a factor in sentencing for the current offense." Standards Relating to Postconviction Remedies § 22–2.4(c)(i) (1978). Here, Muniz established to the court's satisfaction

that his challenged conviction was currently being considered as a basis for enhanced sentencing in a pending case and as the predicate for a habitual criminal charge in a prosecution in another county. Montoya likewise demonstrated at the Crim.P. 35 hearing that he was serving a habitual criminal sentence based in part on the 1964 guilty plea which he was then challenging. Under these circumstances we cannot say that the trial court erred in concluding that the defendants had shown a "present need" for the relief sought. We therefore reject the People's argument that the defendant's postconviction claims should have been barred as untimely.

### III.

We turn to the crux of the People's argument, namely, that the district court erred in granting the defendants' motions for postconviction relief. Crim.P. 35(c)(2) authorizes postconviction relief when "the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state." [11] We need not examine in this case whether the defendants' convictions were obtained in violation of the United States or Colorado Constitutions because, in our view, the convictions

ground was not listed as a basis for his Crim.P. 35 motion. We disagree. In his motion to vacate Muniz expressly claimed that "[n]o definition of the crime was stated in the Providency Hearing" and that "[t]he elements of the charge of Conspiracy to Commit Burglary [were] not mentioned." These allegations give ample notice of Muniz' claim that the court failed to determine, as required by Crim.P. 11, that he understood the nature of the offense to which he pled.

11. Other grounds for postconviction relief are listed in Crim.P. 35(c)(2) as follows:

"(II) That the applicant was convicted under a statute that is in violation of the Constitution of the United States or the constitution of this state, or that the conduct for which the applicant was prosecuted is constitutionally protected;

"(III) That the court rendering judgment was without jurisdiction over the person of the applicant or the subject matter;

"(IV) That the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;

"(V) That there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice;

"(VI) Any grounds otherwise properly the basis for collateral attack upon a criminal judgment; or

"(VII) That the sentence imposed has been fully served or that there has been unlawful revocation of parole, probation, or conditional release."

were obtained in violation of controlling state law at the time the guilty pleas were entered.[12]

█ In 1964 the legal standard by which pleas of guilty were to be measured was Crim.P. 11(a). This rule went into effect on November 1, 1961, and stated as follows:

"A defendant personally or by counsel orally may plead guilty, not guilty, or, with the consent of the court, nolo contendere. The court shall not accept the plea of guilty without first:

(1) *determining that the plea is made voluntarily with understanding of the nature of the charge,* and

(2) explaining fully to the defendant his right to trial by jury, his right to counsel, and the possible penalty provided by statute for the offense charged." (Emphasis added.)

No prescribed ritual was required in 1964 for the acceptance of a guilty plea. *E.g., People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974); *Ward v. People,* 172 Colo. 244, 472 P.2d 673 (1970). However, compliance with Crim.P. 11 did require, as it does now,[13] that there be an adequate basis in the record to support a determination by the court that the defendant understands the nature of the charge to which he is pleading guilty. *See e.g., People v. Mason, Jr.,* 176 Colo. 544, 491 P.2d 1383 (1971); *People v. Randolph,* 175 Colo. 454, 488 P.2d 203 (1971).

█ Although at first blush there might appear to be some tension in our decisions with respect to whether the mere reading of a charge is sufficient to satisfy the requirement of Crim.P. 11(a)(1), a close examination of these cases discloses that the central consideration is the degree to

12. In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that due process of law requires that a guilty plea be understandingly and voluntarily made. *See also, e.g., Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (court's acceptance of guilty plea to second degree murder, without informing defendant of critical element of intent, violates due process of law); *People v. Meyers,* 617 P.2d 808 (Colo.1980) (court's acceptance of guilty plea to burglary, without any showing that accused was aware of even the general nature of the crime, violates due process of law and renders conviction constitutionally inadmissible in independent prosecution). Although we have not applied *Boykin* retroactively to pleas entered prior to June 2, 1969, the date of the *Boykin* decision, *see, e.g., People v. Alvarez,* 181 Colo. 213, 508 P.2d 1267 (1973), we have held, as discussed in the text, that the 1964 version of Crim.P. 11 required some showing in the record of the defendant's understanding of the nature of the charge before a court could properly accept a tendered guilty plea. Our resolution of this case is based solely on a consideration of Crim.P. 11 and not the Due Process Clauses of the United States or Colorado Constitutions, *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25.

13. The present rule 11, which became effective April 1, 1974, provides in pertinent part as follows:

"**(b) Pleas of Guilty and Nolo Contendere.** The court shall not accept a plea of guilty or

a plea of nolo contendere without first determining that the defendant has been advised of all the rights set forth in Rule 5(a)(2) and also determining:

(1) That the defendant understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea;

(2) That the plea is voluntary on defendant's part and is not the result of undue influence or coercion on the part of anyone;

(3) That he understands the right to trial by jury and that he waives his right to trial by jury on all issues;

(4) That he understands the possible penalty or penalties;

(5) That the defendant understands that the court will not be bound by any representations made to the defendant by anyone concerning the penalty to be imposed or the granting or the denial of probation, unless such representations are included in a formal plea agreement approved by the court and supported by the findings of the presentence report, if any;

(6) That there is a factual basis for the plea. If the plea is entered as a result of a plea agreement, the court shall explain to the defendant, and satisfy itself that the defendant understands, the basis for the plea agreement, and the defendant may then waive the establishment of a factual basis for the particular charge to which he pleads;

(7) That in class 1 felonies, or where the plea of guilty is to a lesser included offense, a written consent shall have been filed with the court by the district attorney."

which the charge itself is readily understandable to a person of ordinary intelligence from a mere reading of the information without further explanation by the court. *Compare, e.g., Watkins v. People,* 655 P.2d 834 (Colo.1983) (defendant's affirmative response to the court's question whether he understood the nature of the charge of conspiracy to commit escape is not "the substantive equivalent of a meaningful understanding of the critical elements of that charge" especially since the elements of the offense "are not readily understandable without further explanation"); *People v. Sanders,* 185 Colo. 356, 524 P.2d 299 (1974) (defendant's affirmative response to court's question whether he understood the meaning of the words "assault to rob" not sufficient to establish an understandingly made plea of guilty, the court stating that assault to rob "is not a crime whose elements are readily apparent and understandable to a non-lawyer"), *with People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979) (defendant's guilty plea to second degree murder after court's reading of the charge twice to him sufficient to establish his understanding of the nature of the crime since the charge was "sufficiently understandable to a lay person"); *People v. Edwards, supra* (court's reading of the charge of aggravated robbery sufficient compliance with Crim.P. 11 because the charge included "a clear description of the elements ... couched in language easily understandable to a person of average intelligence"). Even when the defendant or his attorney has waived the formal reading of the information, such waiver does not serve to dispense with the express mandate of Crim.P. 11 that the court not accept the plea of guilty without first determining that the *defendant* understands the nature of the charge. We have held on more than one occasion that compliance with this requirement is mandatory, *e.g., People v. Mason, Jr., supra; People v. Randolph, supra; Westendorf v. People,* 171 Colo. 123, 464 P.2d 866 (1970); *Martinez v. People,* 152 Colo. 521, 382 P.2d 990 (1963). In the absence of some affirmative showing of compliance with the rule, a "plea of guilty cannot be accepted, and any judgment and sentence which is entered following the plea is void." *People v. Randolph,* 175 Colo. at 457, 488 P.2d at 204.

▪ Viewed within the framework of these long-standing principles we are satisfied that the defendants, at the postconviction hearing, presented sufficient evidence to support the Crim.P. 35 court's conclusion that these 1964 guilty pleas did not comply with the mandatory requirements of Crim.P. 11. The only evidence presented at the postconviction hearing was the transcript of the providency hearing. Although, as the transcript shows, the defense attorneys waived the reading of the information at the arraignment, that waiver did not relieve the court of its obligation to spread upon the record the defendants' understanding of the charge of conspiracy to commit burglary before accepting the pleas of guilty to this offense. The court, however, neither explained the charge to the defendants in any manner, nor discussed with them anything about the offense. Nor did the court inquire whether defense counsel might have reviewed the charges with their clients prior to the entry of the guilty pleas. Thus, what the transcript shows is defense counsels' waiver of the reading of the information and nothing more.

The court's failure to comply with Crim.P. 11(a)(1) is compounded by the nature of the crime to which the defendants pled. Conspiracy to commit burglary was and is a crime of some complexity, involving as it does a culpable mental state for the conspiracy itself and a design to achieve the criminal purpose which is the object of the conspiracy. *E.g., Watkins v. People, supra; LaVielle v. People,* 113 Colo. 277, 157 P.2d 621 (1945). A charge of conspiracy, in other words, has legal significance only with respect to some other crime which is the object of the conspiracy. *Watkins v. People, supra; People v. Pleasant,* 182 Colo. 144, 511 P.2d 488 (1973); *Olde v. People,* 112

Colo. 15, 145 P.2d 100 (1944). The record here, however, is barren of any evidence to support a determination by the court which accepted the guilty pleas that the defendants understood the nature of the crime to which they pled.[14] In view of this state of the record, the district court's conclusion that the guilty pleas were entered without compliance with Crim.P. 11 is unassailable.

The judgments are affirmed.

ROVIRA, J., dissents.

ROVIRA, J., dissenting:

I dissent.

*See People v. Watkins,* 655 P.2d 834 (Colo.1983) (Rovira dissenting); *People v. Pauldino,* 187 Colo. 61, 528 P.2d 384 (1974); *People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974).

---

14. The People argue that a presentence report, which was filed with the court approximately six weeks after Muniz' guilty plea was accepted, establishes Muniz' understanding of the nature of the charge to which he pled. The presentence report included the following "statement of offense" by Muniz:

"On October 8, 1964, Thomas Joseph Montoya and I entered a building at 2300 Arapahoe through an open window. We were arrested as soon as we got inside. I didn't take anything, but broke into the cash register."

In our view the presentence report does not satisfy the requirement of Crim.P. 11(a)(1) that the court determine the defendant's understanding of the nature of the charge at the time a guilty plea is tendered and before accepting it. While arguably the presentence report circumstantially establishes a factual basis for the plea, the defendants' postconviction motions were predicated on a separate and independent ground, namely, that their guilty pleas were not understandingly made as required by Crim.P. 11(a)(1). The Muniz presentence report refers to some of the elements of burglary, but it does not refer to any of the elements of conspiracy to commit burglary—that is, an agreement between Muniz and Montoya made with the design or purpose to commit the crime of burglary. We also note that the record does not contain any presentence report with respect to Montoya.