■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENITO H. VINA, Also known as BENITO V. HERNANDEZ, Appellant.—Judgment, Supreme Court, New York County, rendered November 14, 1973, convicting defendant, upon his plea of guilty, of possession of a weapon as a felony reversed, on the law and as a matter of discretion in the interests of justice, the order of said court, entered September 28, 1973, denying defendant's motion to suppress certain physical evidence and statements allegedly made by him, reversed, on the law, and said motion granted, and the case remanded to Supreme Court, New York County, for further proceedings consistent herewith. At the suppression hearing, Officer Guzman testified that he was in the vicinity of certain premises, as an undercover officer, awaiting the arrival of a courier with five kilos of cocaine pursuant to a prearranged appointment. Earlier that day he claims he saw defendant (whom he had previously observed on other occasions and at other locations carrying a black attache case) exit from a late model car, enter the premises under surveillance, exit a short time later and drive away in another car. Some three and one-half hours later, Guzman testified that he saw defendant return on foot, carrying a black attache case and a brown shopping bag. In the belief that appellant was the courier, Guzman said he then followed defendant into the building. At this point, the testimony given at the hearing is conflicting. Guzman stated that he identified himself, asked defendant his name and what he had in the shopping bag and attache case, and was invited in to defendant's apartment. Then, according to Guzman, defendant (who told him he was a jewelry salesman) opened the case and shopping bag for the officer's perusal. Guzman claims he was then about to leave the apartment, satisfied that his suspicions were unfounded (despite the fact that each of five boxes in the bag were clearly inscribed "revolver"), when a box of .38 calibre ammunition fell out of the bag. A further search then disclosed five revolvers, each enclosed in a separate box, and two boxes of ammunition. Guzman then concludes by averring that at this point he arrested defendant, gave him his *Miranda* warnings, called for assistance and received an incriminating admission by defendant that the guns had been purchased from an elderly gentleman on Ninth Avenue. Defendant (corroborated by his wife), on the other hand, testified that Guzman, with gun drawn, ordered defendant into the latter's apartment where he (Guzman) searched the attache case and shopping bag. After denial of the suppression motion, the trial commenced. Counsel requested a short adjournment to obtain certain minutes in a tangentially related Federal case. The application was denied. Nevertheless, counsel obtained a portion of the minutes, but the trial court refused to permit its use to impeach Guzman's testimony by showing (from his testimony in the Federal case), *inter alia,* that the officer was not at the location for the purpose stated, since he had been relieved of his assignment the previous day; and that the officer knew the actual identity of the courier, who was not the defendant herein. Thereafter, apparently frustrated by what defendant considered erroneous rulings by the trial court, a plea of guilty was entered. Although we agree with respondent that, except in rare circumstances not here presented, a valid guilty plea generally waives all nonjurisdictional defects underlying the conviction, we believe error was committed in the denial of the suppression motion; and review of such order of denial is explicitly not waived by a

guilty plea. (CPL 710.70.) Guzman's contention that he was invited into defendant's apartment to search the shopping bag strains one's credulity. But even if we accept the court's finding that the invitation had been tendered, it followed an unlawful seizure. Guzman admittedly stopped defendant and asked him his identity and for an inventory of the contents of the shopping bag. On the record before us, we find neither probable cause for such seizure, nor facts sufficient to justify a reasonable suspicion that defendant was committing, had committed or was about to commit a crime. (See *People v Cantor,* 36 NY2d 106.) Concur—Markewich, J. P., Murphy and Tilzer, JJ.; Capozzoli, J., dissents in the following memorandum: Questions of fact were raised below as to the events which led to the presence of the officer in the apartment of the defendant. The testimony given by the defendant and his wife contradicted that given by the officer. The determination by the court, finding credible the testimony of the police officer, and disbelieving that of the defendant and his wife, was well within the province of the court, and I can see no reason for interfering with it. It should be emphasized that, under CPL 140.50, the officer was authorized to stop the defendant and question him because of his reasonably grounded suspicion. *(People v Rosemond,* 26 NY2d 101.) In the last-cited case, the court said (pp 103–104): "The authorized police action is that the officer 'may stop' the citizen and 'may demand' of him certain specific explanatory information. The situation on which the statute justifies this action is a reasonably grounded suspicion that the citizen is or was committing, or will commit, 'a felony' or certain serious misdemeanors. It is obvious that this statute is not the beginning and the end of the right and duty of police to make inquiries of people on the public streets. Nor does it prescribe the full scope of police activity. Many subjects, other than the commission of felonies, and many grounds, other than a reasonable suspicion that felony is in budding process, will justify police inquiry." While the majority finds that the invitation extended to the officer, as claimed by the People, taxes credulity, it could well be that the defendant might have wished to avoid embarrassment in the event that neighbors observed what was taking place in the hallway and, for that reason, suggested entrance into the apartment. In any event, it was the responsibility of the hearing court to make its determination after having heard both sides. As to the claim of the defendant that the trial court erred in not allowing defense counsel an opportunity to impeach the officer in the manner requested, that was, obviously, waived by his plea of guilty.