The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Michael CABRAL, Defendant-Appellee.

Michael CABRAL, Plaintiff-Appellant,

v.

The PEOPLE of the State of Colorado,
Defendant-Appellee.

Nos. 835A75, 835A133.

Supreme Court of Colorado,
En Banc.

April 15, 1985.

Norman S. Early, Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for the People.

Bender & Treece, P.C., Michael L. Bender, Denver, for Michael Cabral.

ERICKSON, Chief Justice.

In this consolidated appeal,[1] both the prosecution and the defendant, Michael Cabral, appeal from orders entered by the district court pursuant to Crim.P. 35, upholding the defendant's conviction of first-degree assault, section 18–3–202, 8 C.R.S. (1975 Supp.), and vacating his conviction of second-degree assault, section 18–3–203, 8 C.R.S. (1973). The district court found that the defendant's guilty plea to first-degree assault was properly accepted after a providency hearing in 1975, but that his plea of guilty to second-degree assault entered at the same providency hearing was invalid because it was accepted in contravention of the requirements of Crim.P. 11. We agree and therefore affirm.

I.

On October 14, 1975, the defendant entered guilty pleas in Denver District Court to charges of first- and second-degree assault in two separate cases. Sections 18–3–202, 8 C.R.S. (1975 Supp.) & 18–3–203, 8 C.R.S. (1973). The guilty pleas were entered as part of a plea agreement in which additional charges of aggravated robbery, assault, and conspiracy were dismissed by the prosecution. Before accepting the pleas, the district court read the charges in the information to the defendant, advised him of the consequences of his guilty pleas, and told the defendant what penalties could be imposed for each offense. The district court accepted both pleas after finding that they were entered by the defendant voluntarily and with an understanding of the

nature of each charge. The defendant was subsequently sentenced to consecutive terms in the Colorado State Penitentiary.

A motion for post-conviction relief pursuant to Crim.P. 35 was filed by the defendant on September 21, 1982, asserting that the 1975 guilty pleas should be vacated because the district court failed at the providency hearing to explain the specific elements of first- and second-degree assault. The motion also stated that at the time the pleas were taken the defendant was "moderately impaired intellectually" and had an I.Q. of approximately 80. Following a hearing, the district court upheld the defendant's conviction of first-degree assault, but vacated the second-degree assault conviction on the basis that the defendant was not properly advised of the elements of the offense. Both the prosecution and the defendant appealed.

II.

Due process requires that a plea of guilty must be voluntarily and understandingly made. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Wright v. People,* 690 P.2d 1257 (Colo.1984); *People v. Leonard,* 673 P.2d 37 (Colo.1983). A plea of guilty cannot be either a voluntary or a knowing and intelligent admission of guilt unless the defendant receives notice of the true nature of the charge against him. *Leonard,* 673 P.2d at 39. The present version of Crim.P. 11[2] specifies matters that the court must communicate to the defendant before accepting a guilty plea, and provides in pertinent part that the court must determine whether the defendant "understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea." Crim.P. 11(b)(1). We have held that the degree of explanation that the court is

---

1. In 83SA75, the prosecution appealed the order of the district court vacating the defendant's conviction of second-degree assault, while in 83SA133 the defendant appealed the district court's order upholding his conviction of first-degree assault. Inasmuch as both orders were entered by the same division of the district

court in a single Crim.P. 35 proceeding, we consolidated the cases for review.

2. The present version of Crim.P. 11 became effective on April 1, 1974, and governs the defendant's 1975 pleas.

required to provide the defendant at the providency hearing is dependent on the nature and complexity of the crime. *Ramirez v. People*, 682 P.2d 1181 (Colo.1984); *People v. Muniz*, 667 P.2d 1377 (Colo.1983).

### A.

Prior to accepting the defendant's plea of guilty to second-degree assault, the court engaged in the following colloquy with the defendant:

THE COURT: Okay. Now, specifically the charge alleges that on November 24th, last year, almost a year ago, here in Denver, you with the intent to cause bodily injury to another person, you unlawfully and feloniously cause and attempt to cause injury to a person by the name of Ernest Martinez by means of a deadly weapon, to wit: a gun. Now, you are saying that you are entering a plea of guilty to that charge; you are saying that that is true?

MR. CABRAL: Yes, sir.

THE COURT: Okay. Let me ask you specifically about a couple of allegations that I just went through with you. You are admitting to me that you attempted to cause serious bodily injury to a person by the name of Ernest Martinez, and at the time you attempted or did cause serious bodily injury to that person you had a weapon, a gun?

MR. SNOW: [Deputy District Attorney] Excuse me, your Honor. That is bodily injury only. The serious bodily injury would make it a Class 3.

. . . . .

THE COURT: You are correct. I missed that. Mr. Cabral, so you won't be confused on this, I have been using the term "serious bodily injury" as opposed to the term just "bodily injury." I would like to delete and strike that word, "serious." But what I am asking you now is whether or not this is true; that is on last November, here in Denver, with intent to cause bodily injury to another person, a man by the name of Ernest Martinez, and at the time that this occurred you had a weapon, a gun; is that true?

MR. CABRAL: Yes, sir.

After explaining the penalties that could be imposed for second-degree assault and the trial rights that are waived as the result of a guilty plea, the court again elicited the defendant's understanding that second-degree assault requires an attempt to cause "bodily injury" rather than "serious bodily injury," and inquired again whether at the time of the offense the defendant "had a gun," to which the defendant responded affirmatively.

We have held that the mere reading of a charge may be sufficient to satisfy the requirement of Crim.P. 11(b)(1) if the charge itself is readily understandable to persons of ordinary intelligence without further explanation by the court. *Muniz*, 667 P.2d at 1382–83. However, it is incumbent upon the court to advise the defendant of all of the essential elements of the offense, as specified by the statute and set forth in the information. While the information which was initially read to the defendant in this case correctly stated the essential elements of second-degree assault, the district court, in attempting to further explain the elements of the offense, in attempting to further explain the elements of the offense, incorrectly inquired of the defendant whether at the time of the offense he "had a gun." Mere possession of a gun during the commission of an assault, however, is not a correct statement of the deadly weapon element of second-degree assault. The statute requires that the defendant cause or attempt to cause bodily injury *by means of* a deadly weapon. *See* § 18–3–203, 8 C.R.S. (1973). By not advising the defendant of the essential elements of the offense of second-degree assault, the defendant failed to receive notice of the true nature of the charge against him as required by Crim.P. 11(b)(1). The district court therefore properly granted the defendant's Crim.P. 35 motion by vacating his guilty plea to second-degree assault.

### B.

We conclude that the defendant's plea of guilty to first-degree assault was

accepted by the district court in compliance with Crim.P. 11. After accepting the defendant's guilty plea to second-degree assault, the district court addressed the defendant as follows:

THE COURT: All right. Now, this [second] charge alleges before me on November 24th, last year, three days after, the assault in the second degree. This charge is assault in the first degree, which is a Class 3 felony. That is, the penalty is much greater than it is for the plea that I just accepted. All right. It charges in the first degree, and it alleges that on November 21st, last year, with intent to cause serious bodily injury to another person, you did unlawfully and feloniously cause serious bodily injury to a person by the name of Lee Jack Bumgardner by means of a deadly weapon, a gun. And you're saying guilty to that?

MR. CABRAL: Yes, sir.

THE COURT: All right. You are admitting on that date, November 21st, here in Denver, it was your intent to cause this man by the name of Bumgardner serious bodily injury, and you did so with a deadly weapon; a gun; is that true?

MR. CABRAL: Yes, sir.

The court then explained the penalties that could be imposed for first-degree assault, again advised the defendant of the trial rights he was waiving by pleading guilty, and determined that no threats or promises had induced the plea.

The elements of first-degree assault are readily understandable to persons of ordinary intelligence and do not require further explanation by the court. The defendant in this case was properly advised of all of the critical elements of the offense through the reading of the information by the district court, and the record demonstrates that the defendant understood the nature of the offense and the consequences of his guilty plea. It is also significant that the defendant was represented by two competent attorneys prior to and throughout the providency proceedings,[3] and that the defendant acknowledged that they discussed the charges with him and the effect of the plea of guilty prior to the providency hearing. We therefore conclude that the guilty plea was properly received, and that the motion pursuant to Crim.P. 35 to vacate the first-degree assault conviction was properly denied.

## III.

The defendant asserts that the district court failed at the providency hearing to take appropriate precautions to assure that his guilty pleas were voluntarily and understandingly made, inasmuch as he suffered from a mental infirmity at the time he entered his guilty pleas. We disagree.

The district court was aware that the defendant had entered pleas of not guilty and not guilty by reason of insanity before accepting a plea agreement. Reports filed by two psychiatrists who examined the defendant following the insanity plea stated that the defendant was illiterate, moderately impaired intellectually, and quite emotionally disturbed. However, both doctors stated that the defendant provided normal responses to the physical and psychiatric tests that were administered, and that his orientation, memory, abstract thinking, and judgment were all normal. Both psychiatrists concluded that the defendant was sane, that he showed no signs of psychosis or mental illness, and that he was capable of understanding the charges and the proceedings against him.

Before accepting the guilty pleas, the district court questioned the defendant regarding the psychiatric reports, his present mental state, and his understanding of the providency proceeding. The defendant acknowledged that he had no questions about his present mental capacity, that he felt capable of making his own election about

---

3. The first- and second-degree assault charges were originally pending in two divisions of the court, and separate attorneys were appointed to represent the defendant on each charge. The cases were transferred to one division for purposes of the providency hearing to facilitate the plea bargain and the termination of both cases. Both attorneys appeared at the hearing and represented the defendant.

his pleas, and that he had no questions regarding the charges or legal proceedings. One of the defendant's attorneys also advised the court that he had conferred extensively with the defendant regarding the psychiatric reports, and that he was convinced the defendant understood the proceedings.

We have recognized that under some circumstances the court has a duty to exercise a greater degree of care and caution in determining that the accused understands the nature of the charge to which he is pleading guilty. *See Bresnahan v. People,* 175 Colo. 286, 487 P.2d 551 (1971) (defendant suffered from a mental infirmity); *People v. Randolph,* 175 Colo. 454, 488 P.2d 203 (1971) (sixteen-year old defendant). However, the record in this case does not support the defendant's claim that the district court did not exercise a sufficient degree of caution in conducting the providency hearing and in accepting the defendant's guilty pleas.

The judgment of the district court vacating the defendant's guilty plea to second-degree assault (83SA75) and upholding the guilty plea to first-degree assault (83SA133) is affirmed.

QUINN, J., concurs in part and dissents in part.

QUINN, Justice, concurring in part and dissenting in part:

I dissent from that part of the court's opinion affirming the district court's denial of the defendant's motion to vacate his guilty plea to the charge of assault in the first degree. The record of the providency hearing on the defendant's guilty plea to that charge does not adequately support the determination by the court which accepted the guilty plea that the defendant understood the critical elements of the crime of assault in the first degree. Furthermore, although I concur in that part of the opinion which holds invalid the defendant's guilty plea to the charge of assault in the second degree, I cannot endorse the strong implication in the majority opinion that, were it not for the court's incorrect explanation of the deadly weapon element of the charge, the charge of second degree assault would have been readily understandable to a person of ordinary intelligence from a mere reading of the charge without further explanation by the court and, thus, would have been so understood by the defendant.

Crim.P. 11(b)(1), which was in effect at the time of the guilty plea in this case, expressly provides that the court shall not accept a guilty plea without first determining "[t]hat the defendant understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea." An understandingly made plea of guilty requires that the record affirmatively show the defendant's understanding of the critical elements of the charge to which the plea is tendered. *People v. Muniz,* 667 P.2d 1377 (Colo.1983); *Watkins v. People,* 655 P.2d 834 (Colo. 1982); *People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979); *People v. Colosacco,* 177 Colo. 219, 493 P.2d 650 (1972). The time at which a defendant's knowledge about an offense is critical is necessarily that period during which the guilty plea is proffered and accepted. *Harshfield v. People,* 697 P.2d 391 (Colo.1985). Compliance with Crim.P. 11(b) requires a court accepting a guilty plea to explain the critical elements of the crime in terms that are understandable to the defendant. *E.g., Watkins,* 655 P.2d at 837; *People v. Cumby,* 178 Colo. 31, 495 P.2d 223 (1972). Although a principal factor in determining whether this requirement has been satisfied is the "degree to which the charge itself is readily understandable to a person of ordinary intelligence from a mere reading of the information without further explanation by the court," *Muniz,* 667 P.2d at 1382–83, it by no means follows that the mere reading of a nontechnical charge conclusively establishes the requisite compliance with Crim.P. 11(b)(1). On the contrary, the ultimate criterion of Crim.P. 11(b)(1) is whether the defendant, not the hypothetical person of ordi-

nary intelligence, actually understands the nature of the charge and the elements of the offense to which the guilty plea is made. If the record shows that the defendant's intellectual capacity is below that of a person of ordinary intelligence, then it is incumbent upon the court to supplement the mere reading of the charge by an additional explanation so that the record "clearly show[s] facts which manifestly indicate the defendant's knowledge" of the charge. *Colosacco*, 177 Colo. at 222, 493 P.2d at 651.

I cannot categorize the crimes to which the defendant pled guilty as offenses readily understandable to a person of ordinary intelligence without some additional explanation by the court. The critical elements of assault in the first degree, as charged in the information, are: (1) with specific intent to cause serious bodily injury to another person, (2) causing or attempting to cause such injury, (3) by means of a deadly weapon. § 18–3–202(1)(a), 8 C.R.S. (1978). Serious bodily injury means bodily injury "which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 18–1–901(3)(p), 8 C.R.S. (1978). A person acts "with intent" when his conscious objective is to cause the particular result proscribed by the statute defining the offense. § 18–1–501(5), 8 C.R.S. (1978). The significance of the term "with intent to cause serious bodily injury" thus requires some understanding of both the technical sense in which "intent" is employed in the Colorado Criminal Code and the statutory definition of serious bodily injury. *See People v. Sanders*, 185 Colo. 356, 358, 524 P.2d 299, 300 (1974) (defendant's affirmative response to court's question whether he understood the meaning of "assault to rob" not sufficient to establish an understandingly made plea of guilty, because the crime of assault to rob "is not a crime whose elements are readily apparent and understandable to a non-lawyer"). In accepting the defendant's guilty plea to assault in the first degree, the court merely recited the basic elements alleged in the information and made no effort whatever

to explain these elements in terms to which the defendant might relate.

The elements of the crime of assault in the second degree, as charged against the defendant, are also somewhat technical, including as they do: (1) with specific intent to cause bodily injury to another person, (2) causing or attempting to cause such injury, (3) by means of a deadly weapon. § 18–3–203(1)(b), 8 C.R.S. (1978). An attempt is the taking of some substantial step towards the commission of the offense beyond mere preparation. *People v. Weller*, 679 P.2d 1077, 1082 (Colo.1984). It cannot reasonably be assumed that the average person would understand the significance of this element without some additional explanation by the court. Furthermore, like the crime of assault in the first degree, the crime of assault in the second degree is a specific intent offense. This means that the defendant's conscious objective in engaging in certain conduct must be to cause bodily injury to another person, as opposed to scaring or bringing about some other reaction in that person. *See* § 18–1–501(5), 8 C.R.S. (1978). "Bodily injury," as defined by statute, means "physical pain, illness, or any impairment of physical or mental condition." § 18–1–901(3)(c), 8 C.R.S. (1978).

Even were I to accept the majority's assumption that the elements of assault in the first degree and assault in the second degree are readily apparent to a person of ordinary intelligence without further explanation by the court, the record in this case quite conclusively shows that the defendant was not a person of ordinary intelligence. The psychiatric reports filed with the court in connection with the defendant's insanity plea indicate that the defendant had "an I.Q. of about 80," was "illiterate and unable to read and write," and functioned at an intellectual level compatible with a fourth grade education. These reports, which were called to the attention of the Crim.P. 35 court at the postconviction hearing, serve to confirm the fact that, in view of the defendant's marginal intellectual capacity, a much more specific and

thorough explanation of the charges was required of the court which accepted the guilty pleas. In the absence of such explanation, I find an inadequate basis in the record to affirmatively support a determination that the defendant understood the nature of the charges and the elements of the crimes to which he pled. I would therefore hold both pleas legally infirm.