Jimmy Lee WAITS, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 84SC391.

Supreme Court of Colorado, En Banc.

Sept. 8, 1986.

As Modified on Denial of Rehearing Sept. 29, 1986.

Norman R. Mueller, Haddon, Morgan & Foreman, P.C., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for respondent.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, amicus curiae.

DUBOFSKY, Justice.

We granted certiorari in *People v. Waits*, 695 P.2d 1176 (Colo.App.1984), to consider three issues: (1) whether two guilty pleas entered by the defendant, Jimmy L. Waits, met the requirements of Crim.P. 11 and due process of law; (2) whether attempted felony murder is a valid offense, and if not, whether Waits's guilty plea to attempted felony murder extinguishes his due process right to be advised of the nature of the offense; and (3) whether, given that Waits entered his guilty plea following a suppression ruling by this court that we later overruled, Waits's guilty pleas were knowingly, intelligently, and voluntarily entered. We decide that the Crim.P. 11 advisement on attempted felony murder was inadequate and therefore vacate the plea to that charge. The guilty plea to second degree burglary, however, met the requirements of Crim.P. 11 and due process and was knowingly, intelligently, and voluntarily entered based on the applicable law concerning searches at the time of the plea. Finally, we determine that the People may retain the present sentence for the burglary plea or may retry the defendant on the attempted murder charge, in which case the entire plea package is vacated. We therefore reverse in part and affirm in part the judgment of the court of appeals.

I.

On February 15, 1977, the defendant was charged with second degree burglary under section 18–4–203, 8 C.R.S. (1978), after

police officers found in the defendant's car objects reported stolen from a home a few days earlier. The district court suppressed the evidence found in the car because the court determined that the defendant's action to evade the police officers did not justify the officers' subsequent investigatory stop and search of the car. In the People's interlocutory appeal in *People v. Waits,* 196 Colo. 35, 580 P.2d 391 (1978), this court reversed the suppression order, ruling that the defendant's evasive maneuvers gave rise to a reasonable suspicion of criminal activity sufficient to support an investigatory stop.

On December 18, 1978, the defendant was charged with attempted first degree murder under section 18–2–101, 8 C.R.S. (1978), based on evidence that during the night of December 15, 1978, after the victim found the defendant standing in the victim's living room, the defendant stabbed the victim a number of times. The victim escaped and ultimately recovered from the stab wounds; the defendant was arrested inside the victim's home. The December 18, 1978, information included two habitual criminal counts. § 16–13–101(1), 8 C.R.S. (1978).[1]

On January 30, 1979, after this court's reversal of the suppression order in the burglary case, the defendant pleaded guilty to attempted first degree murder, second degree burglary, and the habitual criminal charges. At the advisement the defendant stated that he understood the elements of attempted first degree murder and second degree burglary and that he was the person convicted of two prior felonies in New Mexico. The court sentenced him to two concurrent prison terms of twenty-five to fifty years, and other charges pending against him were dismissed.[2]

On November 3, 1980, the defendant filed a Crim.P. 35(c) motion asserting that the district court had failed to comply with Crim.P. 11 because its explanation of the elements of first degree murder and second degree burglary was inadequate. At the hearing on his motion, the defendant testified that he did not know during the advisement whether he was pleading guilty to attempted murder or murder or what the elements of burglary were. The district court denied the defendant's Crim.P. 35(c) motion, ruling that the defendant stated during the advisement that he understood the nature of the charge, that the advising court[3] explained to the defendant what criminal attempt meant, that the court satisfactorily explained the elements of burglary, and that the defendant had past experiences with court cases involving burglary.

Prior to oral argument in the court of appeals on the defendant's Crim.P. 35(c) claim, this court, in *People v. Thomas,* 660 P.2d 1272 (Colo.1983), overruled *People v. Waits,* 196 Colo. 35, 580 P.2d 391. In *Thomas,* 660 P.2d at 1277, we held that efforts to avoid police contact, by themselves, are insufficient to provide a reasonable suspicion for an investigative stop. Based on *Thomas,* the defendant requested remand of his appeal to allow the district court to consider whether his guilty pleas, entered after an allegedly erroneous ruling upholding the seizure of evidence, were knowing, intelligent, and voluntary. On remand, the district court ruled that a defendant who pleads guilty waives his right to challenge illegally seized evidence.

The court of appeals affirmed the district court's rulings on the ground that because the defendant received a substantial benefit[4] by pleading guilty to attempted first

---

**1.** The People apparently were prepared to file three more habitual criminal counts if the defendant did not plead guilty.

**2.** The pending cases included separate charges of aggravated robbery, two second degree burglaries, theft, and carrying a concealed weapon.

**3.** The district court judge who took the defendant's plea is not the same judge who heard the Crim.P. 35(c) motion.

**4.** The defendant was facing the possibility of a life sentence, for which he would have had to serve a minimum of twenty years; his sentence to a term of twenty-five to fifty years had a twelve year minimum.

degree murder and second degree burglary, a denial of postconviction relief was proper. Noting that a coherent advisement of the elements of attempted felony murder would be impossible, the court of appeals determined that the district court's discussion of the range of penalties facing the defendant based on his plea and the defendant's agreement to those penalties barred a challenge to the advisement. The court of appeals ruled also that the district court adequately explained the nature and elements of second degree burglary given the defendant's previous experience in pleading guilty to burglary charges. Finally, the court of appeals agreed with the district court that the defendant's guilty plea to burglary waived his right to collaterally attack the suppression issue.

## II.

The defendant asserts that his guilty pleas to attempted first degree murder and second degree burglary were entered in violation of Crim.P. 11 and due process of law because the advisement concerning attempted first degree murder was nonsensical and because the advisement concerning second degree burglary failed to define and explain the terms "intent," "specific intent," and "theft." Due process requires that a court accept a guilty plea only when it has ascertained that the plea is voluntary, knowing, and intelligent. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *People v. Cabral,* 698 P.2d 234 (Colo.1985); *Harshfield v. People,* 697 P.2d 391, 393 (Colo.1985); *People v. Leonard,* 673 P.2d 37, 39 (Colo.1983); *see also People v. Mozee,* 723 P.2d 117, 121–22 n. 4 (Colo.1986) (court adopts formulation that valid waiver of rights must be made voluntarily, knowingly, and intelligently; court also inquires whether waiver was intentional because court previously has used various combinations of the terms "knowingly," "voluntarily," "intelligently," and "intentionally" to determine the validity of waiver).

Crim.P. 11, which contains the procedure for taking guilty pleas in accordance with constitutional requirements, *Leonard,* 673 P.2d at 39–40, provides in pertinent part:

(b) The court shall not accept a plea of guilty or a plea of nolo contendere without first determining that the defendant has been advised of all the rights set forth in Rule 5(a)(2) and also determining:

(1) That the defendant understands the nature of the charge and the elements of the offense to which he is pleading and the effect of his plea....

In meeting the requirements of Crim.P. 11, we have not required courts to proceed in a formulaic manner, *see Wilson v. People,* 708 P.2d 792 (Colo.1985), but have held instead that the explanation necessary depends on the nature and complexity of the crime. *Cabral,* 698 P.2d 234; *Wright v. People,* 690 P.2d 1257, 1261 (Colo.1984). However, the record must show that the defendant understood the critical elements, including the intent requirement, of the crime to which the plea is tendered. *Wilson,* 708 P.2d 792; *Cabral,* 698 P.2d 234; *Watkins v. People,* 655 P.2d 834 (Colo. 1983).

### A.

The district court gave the following attempted first degree murder advisement:

Q. In Case CR–11604, in Count 1, Mr. Waits, you are charged that on the 15th day of December, at the City and County of Denver, State of Colorado, Jimmy L. Waits, that is you, did unlawfully and feloniously attempt to commit the crime of First Degree Murder, which is a Class 1 felony, against [the victim] and did engage in conduct constituting a substantial step toward the commission of said crime, as defined by 18–3–102, C.R.S. 1973, as amended; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.

Do you understand the nature of the charge?

A. Yes.

Q. You understand that the elements of *First Degree Murder* are that you, acting either alone or with one or more persons, committed or attempted to commit, and in the course of or furtherance of the crime that he is committing or attempting to [commit], or of immediate flight therefrom, the death of a person, other than than one of the participants, is caused.

You understand that the elements— *those are the elements of murder,* and the District Attorney would have to prove all the elements of the offense beyond a reasonable doubt.

Do you have any questions about those elements, sir?

A. No, sir.

(Emphasis added.) Later, in explaining the elements of criminal attempt in connection with first degree murder, the court noted that

the substantial step, Mr. Waits, means any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Now, I think the definition is probably more complicated—

. . . .

It shows, Mr. Waits, that you were serious about what you started to do.

It is unclear from either the information or the advisement whether the defendant was charged with attempted murder with deliberation, attempted felony murder, or attempted extreme indifference murder. The People assert that the charge of attempted first degree murder involved a charge of attempted felony murder. A person commits the crime of felony murder if

[a]cting either alone or with one or more persons, he commits or attempts to commit arson, robbery, burglary, kidnapping, sexual assault in the first degree or second degree as prohibited by section 18–3–402 or 18–3–403, or a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

§ 18–3–102(1)(b), 8 C.R.S. (1978). Specific intent is not required for felony murder. *People v. Scheer,* 184 Colo. 15, 518 P.2d 833 (1974). A person commits criminal attempt if

acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

§ 18–2–101(1), 8 C.R.S. (1978). An essential element of criminal attempt is that the defendant act knowingly with respect to the underlying offense. *People v. Krovarz,* 697 P.2d 378 (Colo.1985).[5]

■ Here, the district court mislabeled the attempted murder charge as that of first degree murder numerous times and gave an incomprehensible description of the elements of attempted first degree murder. Therefore, the advisement concerning attempted first degree murder did not meet the requirements of Crim.P. 11,

---

5. The defendant asserts that it is logically impossible to attempt felony murder because such a crime would require intent to commit the felony murder, not the burglary, and, by its nature, felony murder, unlike murder with deliberation, is an unintentional crime. *See People v. Hernandez,* 44 Colo.App. 161, 614 P.2d 900 (1980); *People v. Viser,* 62 Ill.2d 568, 343 N.E.2d 903 (1975); *State v. Darby,* 200 N.J.Super. 327, 491 A.2d 733 (1984); *State v. Johnson,* 103 N.M. 364, 707 P.2d 1174 (App.1985); *Bailey v. State,* 100 Nev. 562, 688 P.2d 320 (1984); *State v.*

*Howell,* 649 P.2d 91 (Utah 1982). The People answer that several other jurisdictions have recognized attempted felony murder as a crime. *See Wilson v. State,* 272 Ark. 361, 614 S.W.2d 663 (1981); *Amlotte v. State,* 456 So.2d 448 (Fla.1984); *Johnson v. State,* 486 So.2d 657 (Fla. Dist.Ct.App.1986); *Hardy v. State,* 301 Md. 124, 482 A.2d 474 (1984). Because the advisement of attempted first degree murder does not meet the requirements of Crim.P. 11, we need not determine if there is such a crime as attempted felony murder.

and we vacate the defendant's guilty plea to attempted first degree murder.

### B.

The defendant also asserts that the advisement concerning second degree burglary was deficient because the district court did not explain the terms "intent," "specific intent," and "theft." Section 18–4–203(1), 8 C.R.S. (1978), provides that "[a] person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against a person or property." Second degree burglary requires specific intent and actual constructive trespass. *People v. Diaz*, 182 Colo. 369, 513 P.2d 444 (1973); *People v. Archuleta*, 180 Colo. 156, 503 P.2d 346 (1972).

Initially, the district court advised the defendant concerning second degree burglary as follows:

Q. Now, in Case No. 8362, it's charged that on the 11th day of February, 1977, at the City and County of Denver, State of Colorado, Jimmy Lee Waits, did unlawfully, feloniously and knowingly break an entrance into and enter and remain unlawfully in [a] dwelling ... with the intent to commit therein the crime of theft....

. . . .

Q. (By the Court) Now, second degree burglary, Mr. Waits, is—the elements are as follows:

That knowingly breaking and entering into or entering or remaining unlawfully in a dwelling or building or occupied structure, other than a dwelling, with the specific intent to commit the crime or crimes against person or property, a crime other than trespass.

Do you understand the elements of that offense?

A. Yes.

Later, after the prosecutor reminded the court to break down the elements of the crime and explain each one, the court stated:

Q. (By the Court) On Case No. 8362, Mr. Waits, the first count reads that on the 11th day of February, 1977, at the City and County of Denver, Jimmy Lee Waits did unlawfully, feloniously and knowingly break an entrance into and enter and remain unlawfully.

Now, the Court—the District Attorney, if this matter went to trial, would have to prove, first of all, that on the 11th day of February,—he would have to prove the date and place. That the offense occurred in the City and County of Denver. That you did unlawfully, which means against the law, feloniously, which also means it was against the law, and knowingly, which means that you knew what you were doing, and that you deliberately did it, break an entrance, which means that you didn't have the right to break into and enter and remain unlawfully in the dwelling ... with the intent therein to commit the crime of theft, and this means that you did not have the consent of [the victim] to be at that place, and that you went in there with the intent to commit that kind of a crime. Either stealing something against the peace and dignity of the State of Colorado.

Those are the things that the District Attorney would have to prove beyond a reasonable doubt to a jury. And by entering a plea of guilty, of course, you are waiving those rights.

▮ While the district court did not define the terms "intent," "specific intent," and "theft," the court correctly noted that second degree burglary required specific intent to commit a crime against person or property, in this case theft,[6] and that the offense must be committed knowingly.

---

**6.** Section 18–4–401, 8 C.R.S. (1978), defines theft as follows:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value....

For a crime of the complexity of second degree burglary, this is sufficient to meet the requirements of Crim.P. 11 and due process. *See Wilson,* 708 P.2d 792; *People v. Adrian,* 701 P.2d 45 (Colo.1985); *cf. Harshfield,* 697 P.2d 391 (Crim.P. 11 requirements not met because court failed to discuss *mens rea* requirement for breaking and entering a motor vehicle); *Leonard,* 673 P.2d 37 (court's specific questions and comments concerning the elements of and factual basis for conspiracy to commit burglary and attempt to commit theft met requirements of Crim.P. 11). We therefore reject the defendant's Crim.P. 35(c) challenge to his guilty plea to second degree burglary.

### III.

The defendant also asserts that his guilty pleas were not knowingly, intelligently, and voluntarily entered because they were entered after an erroneous ruling of this court. Prior to the defendant's guilty plea, this court reversed the district court's suppression order concerning the objects found in the defendant's car, finding that the defendant's evasive maneuvers established sufficient reasonable suspicion by police officers to support an investigatory stop. *People v. Waits,* 196 Colo. 35, 580 P.2d 391 (1978). However, in *People v. Thomas,* 660 P.2d 1272, 1277 (Colo.1983), we expressly overruled the *Waits* holding "that action which does not amount to illegal conduct but is taken simply to avoid police contact is sufficient to support an investigative stop." The fact that we overruled *Waits* after the defendant pleaded guilty, however, does not make *Waits* an erroneous ruling that renders the defendant's guilty pleas not knowingly, intelligently, and voluntarily entered. Rather, existing cases are considered to be the law until they are overruled. *See United States v. Peltier,* 422 U.S. 531, 535, 542, 95

S.Ct. 2313, 2316, 2320, 45 L.Ed.2d 374 (1975).

While we determine that a defendant may not attack a guilty plea on the basis that the law later changed, there remains the question whether *Thomas* should be applied retrospectively to require suppression of the objects found in the defendant's car and therefore invalidation of his guilty pleas. This court has followed the lead of the United States Supreme Court in determining the retrospectivity of a rule of criminal procedure, but on fourth amendment questions we have not chosen between the retrospectivity analysis set forth in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and the "bright line" approach announced later in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). *People v. Timmons,* 690 P.2d 213, 215–16 (Colo.1984). In *Stovall,* 388 U.S. at 297, 87 S.Ct. at 1970, the Court considered "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *See also People v. Walker,* 666 P.2d 113 (Colo.1983). In *Johnson,* 457 U.S. at 562, 102 S.Ct. at 2593, the Court held that, except for cases clearly controlled by existing retrospectivity precedent, decisions construing the fourth amendment would be applied retrospectively to all convictions not yet final at the time the decision was rendered.

In *Johnson,* 457 U.S. at 562, 102 S.Ct. at 2593, however, the Court expressly refused to address the retrospective reach of fourth amendment decisions to cases, such as this one, that involve collateral attacks, and while *Stovall,* 388 U.S. at 296, 87 S.Ct. at 1969, involved a collateral attack, the case did not involve a fourth amendment challenge.[7] The United States Supreme Court

---

**7.** Because the Court in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), held that a defendant may not challenge evidence obtained in an unconstitutional search and seizure in a habeas corpus proceeding where the prisoner has had full and fair opportunity to

litigate the fourth amendment claim in state court, cases raising fourth amendment challenges on collateral attack are now rare, occurring only in situations in which a state has failed to provide a prisoner with an opportunity for full and fair litigation of his claim, analo-

has since held that the *Johnson* analysis is also applicable to cases on direct appeal review involving the fifth amendment, *Shea v. Louisiana*, 470 U.S. 51, 54–58, 105 S.Ct. 1065, 1068–70, 84 L.Ed.2d 38 (1985), and that the *Stovall* factors apply to collateral attacks involving fifth amendment issues, *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), but the Court has not addressed specifically the retrospectivity analysis to be applied to collateral attacks involving fourth amendment issues.

■ Neither the *Stovall* analysis nor the *Johnson* analysis, however, leads us to conclude that *Thomas* should be applied retrospectively. In applying *Stovall*, we first look at the purpose of the rule in *Thomas* that furtive gestures alone may not be the basis for an investigative stop. *Thomas* focused on the protection of personal security and privacy from arbitrary and abusive police practices. This purpose, while important, is less significant than whether the new rule in *Thomas* enhances the reliability of the fact finding process and whether violation of the rule produces an unfair trial. *See Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Stovall*, 388 U.S. at 298, 87 S.Ct. at 1970. While violation of the rule may contribute to an unfair trial, enhancing trial reliability is a matter of degree and a failure to observe a newly established rule does not always result in inaccuracies and unfairness. *Solem*, 465 U.S. at 644, 104 S.Ct. at 1342. The countervailing consideration of the disruption that would be caused by retrospective application of *Thomas*, in this case and in others, persuades us that *Thomas* should not be applied retrospectively.

Even if this case involved direct review, *Johnson*, 457 U.S. at 549–51, 102 S.Ct. at 2586–87, suggests that courts should not

apply a "new" fourth amendment rule retrospectively when the rule is "an entirely new and unanticipated principle of law." No new fourth amendment principle marking a clear break with the past has been applied retrospectively. *United States v. Leon*, 468 U.S. 897, 912–13, 104 S.Ct. 3430, ——, 82 L.Ed.2d 702 (1984). In *Johnson*, 457 U.S. at 549–551, 102 S.Ct. at 2586–87, the court noted that a clear break with the past occurs when a decision explicitly overrules a past precedent. In cases such as *Thomas* where an express overruling of prior precedent occurred, the third *Stovall* factor—the effect on the administration of justice of a retrospective application of the new rule—militates in favor of applying the new rule prospectively only.[8] *See Desist v. United States*, 394 U.S. 244, 250, 89 S.Ct. 1030, 1034, 22 L.Ed.2d 248 (1969).

The analysis in *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374, although it involved a direct appeal, supports our conclusion that *Thomas* should not be applied retrospectively. The court in *Peltier* refused to require retrospective application of *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), which invalidated warrantless automobile searches without probable cause, in part because retrospective application did not serve the exclusionary rule's underlying policies, deterring unconstitutional searches and preserving judicial integrity. The fact that this is a collateral attack on the guilty pleas under Crim.P. 35(c) serves as an additional reason not to apply *Thomas* retrospectively because such a retrospective application would severely burden the administration of justice. *Shea*, 470 U.S. at ——, 105 S.Ct. at ——; *see also Stovall*, 388 U.S. at 299–300, 87 S.Ct. at 1971.

Having determined that *Thomas* is not to be applied retrospectively, we reject the

---

gous federal cases under 28 U.S.C. § 2255 (1982), and collateral challenges by state prisoners under postconviction release statutes that recognize fourth amendment claims. *Johnson*, 457 U.S. at 562 n. 20, 102 S.Ct. at 2593 n. 20.

**8.** Prospective application of a "new" constitutional rule allows those involved in the challenge that results in the new rule to benefit from the new rule. *See Peltier*, 422 U.S. at 542 n. 12, 95 S.Ct. at 2320 n. 12; *Stovall*, 388 U.S. at 300–01, 87 S.Ct. at 1971–72.

defendant's assertion that his pleas were not made knowingly, intelligently, or voluntarily because they were based on our ruling in *Waits*, which was the then-applicable law.

Even if we were to apply *Thomas* retrospectively, in this case by pleading guilty the defendant waived any argument about illegally seized evidence. The general rule is that a defendant who pleads guilty is precluded from attacking his plea on the ground that evidence was seized in an illegal search and seizure unless a right to challenge the plea is preserved by statute. *E.g., Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S.Ct. 886, 889, 43 L.Ed.2d 196 (1975); *Von Pickrell v. People*, 163 Colo. 591, 431 P.2d 1003 (1967); · *People v. Vina*, 47 A.D.2d 895, 367 N.Y.S.2d 268 (N.Y.App. Div.1975) (statute preserves review of denial of suppression after guilty plea); *People v. Miller*, 33 Cal.3d 545, 658 P.2d 1320, 189 Cal.Rptr. 519 (1983) (statute preserves right to challenge guilty plea on appeal after trial court's denial of suppression motion); J. Bond, *Plea Bargaining & Guilty Pleas* § 7.21(a)-(g), at 7–68 to 7–77 (2d ed. 1982); 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.1(d), at 487–94 (1978).

■ In *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), and *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (the *Brady* trilogy), the United States Supreme Court upheld the validity of guilty pleas that were induced by the prospect that a coerced confession would be used at trial and that an unconstitutional death penalty would be imposed following a trial. The Court upheld the guilty pleas because the defendants had been competently counseled by an attorney before deciding to plead guilty. *McMann*, 397 U.S. at 772, 90

S.Ct. at 1449; *Parker*, 397 U.S. at 794–98, 90 S.Ct. at 1460–62; *Brady*, 397 U.S. at 749–58, 90 S.Ct. at 1469–74.[9] Commentators have criticized the *Brady* trilogy as undermining a waiver theory that requires the intentional relinquishment or abandonment of rights and weakening the deterrence function of the exclusionary rule because law enforcement officials know that many cases will result in plea bargains. *See* Alschuler, *The Supreme Court, The Defense Attorney, and The Guilty Plea*, 47 U.Colo.L.Rev. 1, 35–41 (1975); Tigar, *The Supreme Court; 1969 Term: Forward: Waiver of Constitutional Rights: Disquiet in the Citadel*, 84 Harv.L.Rev. 1, 19–25 (1970); Note, *The Guilty Plea As A Waiver of "Present But Unknowable" Constitutional Rights: The Aftermath of the Brady Trilogy*, 74 Colum.L.Rev. 1435 (1974); *cf.* Note, *Conditional Guilty Pleas*, 93 Harv.L.Rev. 564 (1980) (allowing conditional guilty plea in order to preserve constitutional claims for appeal is sound judicial policy and constitutionally compelled). Despite the criticism of the *Brady* trilogy and the fact that none of the *Brady* trilogy cases concern the possible use of illegally seized evidence, it makes sense to preclude the defendant's collateral attack on his guilty pleas in this case because even had the evidence been seized illegally, the constitutional infirmity merely weakens the state's case, an impact on the guilty plea that is hard to measure. *See* Note, *supra*, 74 Colum.L.Rev. at 1459–60. We therefore find no reason in the facts of this case to depart from the general rule that by pleading guilty the defendant waived the right to challenge his plea on the basis of an illegal search and seizure.

## IV.

The defendant argues that if his guilty plea to attempted felony murder is vacated

9. A guilty plea does not preclude all challenges to the plea even when competent counsel is provided. *See Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam) (double jeopardy claim is not waived by a plea); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40

L.Ed.2d 628 (1974) (guilty plea does not preclude challenge based on due process claim that state is retaliating for exercise of right to trial de novo by substituting more serious charge); Note, *supra*, 74 Colum.L.Rev. at 1460–62.

his plea to second degree burglary must also be vacated because the two pleas were part of a plea package. *People v. Miller,* 33 Cal.3d 545, 658 P.2d 1320, 189 Cal.Rptr. 519 (1983); *People v. Hill,* 12 Cal.3d 731, 528 P.2d 1, 29, 30, 117 Cal.Rptr. 393 (1974), *rev'd on other grounds, People v. De-Vaughn,* 18 Cal.3d 889, 558 P.2d 872, 875 n. 5, 135 Cal.Rptr. 786 (1977). Both *Miller* and *Hill* noted that exclusion of the illegally obtained evidence on which the defendants' pleas rested would cumulatively weaken the state's case.

 In this case, the failure properly to advise the defendant concerning attempted first degree murder under Crim.P. 11, unlike the exclusion of illegally obtained evidence in *Miller* and *Hill,* does not cumulatively weaken the state's case against the defendant and there is no reason to invalidate the plea to second degree burglary. In the context of two guilty pleas that resulted in consecutive sentences, we have previously invalidated one plea and upheld the other. *People v. Cabral,* 698 P.2d 234 (Colo.1985). Although invalidation of the guilty plea to attempted first degree murder does not shorten the defendant's sentence because the sentences are concurrent, invalidation of one conviction is not a hollow victory because that conviction may not be used for habitual criminal purposes. *Cf. People v. Muniz,* 667 P.2d 1377 (Colo. 1983) (defendant has standing to challenge conviction after sentence is served since conviction may be basis of future habitual criminal charge). Here, the defendant receives the benefit of his guilty plea to second degree burglary because he was sentenced to twenty-five to fifty years as he agreed. As long as the People do not reinstate the other charges, the defendant has no basis for claiming that there has been a broken plea agreement. *See* Westen & Westen, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif.L.Rev. 471, 507–08 (1978).

 Ordinarily the People may reinstate the charges when a guilty plea is vacated, *see People v. Colosacco,* 177 Colo. 219, 493 P.2d 650 (1972), and a defendant may withdraw a guilty plea if a court does not agree with the plea bargain. *See People v. Wright,* 194 Colo. 448, 573 P.2d 551 (1978); *see also Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); 3 ABA, *Standards for Criminal Justice,* Pleas of Guilty, Standard 14–3.3(g) commentary, at 14.88–14.89 (1979). Nevertheless, if the People reinstate the attempted first degree murder charge or any of the other charges, then both the guilty plea to attempted first degree murder and the guilty plea to second degree burglary should be vacated because retrying the defendant on fewer than all the charges would violate the plea agreement, which required two concurrent sentences of twenty-five to fifty years and dismissal of the other charges. The proper course in this case is to let the People decide whether to retry the defendant on all charges. *Cf. Crespin v. People,* 721 P.2d 688 (Colo.1986) (prosecutor may make decision whether to retry defendant on charge or ask for conviction on lesser offense based on evidence from original trial).

We reverse that portion of the judgment of the court of appeals affirming the defendant's guilty plea to attempted first degree murder and affirm the court of appeals' judgment with respect to the guilty plea to second degree burglary. We remand the case to the court of appeals with directions to the district court to vacate the plea to attempted first degree murder. If the People wish to reinstate any of the original charges, they must do so within sixty days of the order vacating the plea. Then the district court is directed to vacate the guilty plea to second degree burglary if the defendant so moves within thirty days after the filing of the charges.

ERICKSON, Justice, concurring in the result:

I concur in the result reached by the majority. I write separately to express my disagreement with that portion of Part III of the opinion that relates to prospectivity and retrospectivity. In my view, retrospectivity is not an issue because the peti-

tioner waived any objections to the search of his car by pleading guilty to the charge of second-degree burglary.

The facts in this case cause me to emphasize how little relevance the search and seizure has to the defendant's guilty pleas. The attempted murder charge is tied to events which occurred on December 15, 1978. The defendant was burglarizing the victim's house and his activities awakened the victim. The victim confronted the defendant in the living room. The defendant assaulted the victim and said: "You saw me. Now I am going to have to kill you, kill you." The victim was stabbed many times but managed to escape and the police were called. The defendant was arrested by police officers while he was still inside the victim's house. *People v. Waits,* 196 Colo. 35, 580 P.2d 391 (1978), referred to by the majority in addressing the prospectivity-retrospectivity issue, involves yet another burglary and an arrest and search in 1977. Multiple charges were pending against the defendant, and the defendant's background reflected the defendant's guilt of a number of other felonies in New Mexico. Defense counsel bargained for a sentence of 25 to 50 years. Offenses were selected that would fulfill the bargains sought and wipe the slate clean. I would not at this late date overturn the bargain and explore rights that were not in issue at the time the plea negotiations were finalized.

A plea of guilty that is intelligently, understandingly, and voluntarily made waives all nonjurisdictional defects, including any claim that evidence was illegally seized. *United States v. Johnson,* 634 F.2d 385 (8th Cir.1980). A plea of guilty is an admission of factual guilt, 3 LaFave, *Search & Seizure* § 11.1(d) (1978), and all nonjurisdictional objections relevant to the issue of factual guilt are rendered irrelevant by a guilty plea. *Lucero v. People,* 164 Colo. 247, 434 P.2d 128 (1967). The

American Bar Association Standards of Criminal Justice relating to guilty pleas are in accord. Standard 14–1.4 states that a guilty plea should not be accepted unless the defendant understands "that by pleading guilty the defendant waives the right to object ... to evidence allegedly obtained in violation of constitutional rights...." Standards of Criminal Justice § 14–1.4(a)(v) (1980). *See also Stone v. State,* 108 Idaho 822, 702 P.2d 860 (App.1984); *People v. Wilkens,* 139 Mich.App. 778, 362 N.W.2d 862 (1984).

The fact that *People v. Thomas,* 660 P.2d 1272 (Colo.1983), changed the relevant Colorado law on search and seizure does not make the plea any less voluntary or intelligent. The majority opinion concedes as much. *See* majority op. at 1335. Two cases from the *"Brady* trilogy" are also pertinent.[1] In *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the defendants were convicted on the basis of their pleas of guilty. A number of years later, the Court declared that the New York procedure by which juries decided admissibility of confessions was unconstitutional.[2] The defendants then sought habeas corpus relief, claiming that their confessions were coerced and that they pleaded guilty because of the New York law which was later held to be unconstitutional. The Court rejected the collateral attacks, stating:

> [The defendant who pleads guilty] is convicted on his counseled admission in open court that he committed the crime charged against him.... Whether or not the advice the defendant received in the pre-*Jackson* era would have been different had *Jackson* then been the law has no bearing on the accuracy of the defendant's admission that he committed the crime.

*McMann v. Richardson* at 773, 90 S.Ct. at 1450.

---

1. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

2. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the defendant pleaded guilty under an indictment which subjected him to the death penalty under a federal statute. A portion of the federal statute was later held unconstitutional because the death penalty could only be imposed on the recommendation of the jury, thus making the possibility of the death penalty the price of a jury trial.[3] Again, the Court refused to grant collateral relief to the defendant based on the change of law.

The fact that Brady did not anticipate *United States v. Jackson, supra,* does not impinge the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady v. United States* at 757, 90 S.Ct. at 1473.

As in *McMann* and *Brady,* the fact that the relevant law later changed does not affect the voluntary and knowing character and substance of the plea of guilty. By pleading guilty, petitioner admitted the truth of the charges against him—he did not vouch for the strength of the prosecution's case. A change in the law which affects the strength of the prosecution's case is simply irrelevant to petitioner's admission of factual guilt. *See* Erickson, *The Finality of a Plea of Guilty,* 48 Notre Dame Law. 835 (1973).

Accordingly, the retrospectivity issue in Part III of the court's opinion need not be addressed. Even if we were to assume that *People v. Thomas* is to be given retrospective effect, the defendant waived any objection to illegally seized evidence by his plea of guilty. In my view, the court has failed to elaborate the correct basis for the

result in this case, and has decided the retrospectivity issue prematurely. I therefore concur in the result reached by the majority.

I am authorized to say that Justice ROVIRA and Justice VOLLACK join in this concurrence.

VOLLACK, Justice, specially concurring in part:

I concur in the result reached by the majority. I write separately as to Part II, A., of the opinion because I believe a defendant may not be charged with attempted felony murder, which disposes of the adequacy of the advisement issue under Crim.P. 11. I also join in Justice Erickson's concurrence in result and disagreement with Part III of the opinion.

We granted certiorari review on the question of "[w]hether the entry of a plea of guilty to a non-existent offense [attempted felony murder] is valid and whether the entry of such a plea extinguishes a defendant's due process and procedural right to be advised of the nature of the offense." Under existing Colorado law, upon the entry of a guilty plea, a defendant must be afforded the due process and procedural right to be advised of the nature of the charge and of the elements of the offense to which he is pleading and of the effects of his plea. Crim.P. 11(b)(1); *People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979); *People v. Marsh,* 183 Colo. 258, 516 P.2d 431 (1973); *People v. Jones,* 176 Colo. 61, 489 P.2d 596 (1971). It must logically follow that pleading to a non-existent crime violates the constitutional requirement that the defendant be aware of the elements of the offense and that he voluntarily and understandingly acknowledges his guilt. *People v. Hernandez,* 44 Colo.App. 161, 614 P.2d 900 (1980). Moreover, the failure of a charging document to charge an offense is a jurisdictional deficiency, and a conviction obtained as a result of a plea to a non-existent offense must be reversed.

---

**3.** *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

*United States v. Edrington,* 726 F.2d 1029 (5th Cir.1984); *United States v. Meacham,* 626 F.2d 503, 509–10 (5th Cir.1980); *United States v. Broncheau,* 597 F.2d 1260 (9th Cir.1979), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80.

In my view, attempted felony murder is a non-existent offense, and a plea of guilty to such a charge is invalid. The commission of a criminal attempt under section 18–2–101, 8 C.R.S. (1978), requires a *mens rea* element of intent to commit a specific crime. *Allen v. People,* 175 Colo. 113, 485 P.2d 886 (1971). In contrast, felony murder under section 18–3–102(1)(b), 8 C.R.S. (1978), substitutes participation in the underlying felony for the *mens rea* element otherwise required to support a murder charge. *People v. Hickam,* 684 P.2d 228 (Colo.1984); *People v. Raymer,* 626 P.2d 705 (Colo.App.1980), *aff'd* 662 P.2d 1066 (Colo.1983). All that is necessary for a felony murder conviction is that any death result in the course of any of the enumerated felonies listed under section 18–3–102(1)(b), 8 C.R.S. (1978). *People v. Raymer.* The participation required may be either the commission of the underlying felony or the *attempt* to commit the underlying felony.

An attempt to commit felony murder thus requires proof that the defendant intended to perpetrate an unintentional killing; a logical impossibility. The statutory definitions of the words "attempt" and "felony murder" are internally inconsistent and mutually exclusive.[1]

Because I believe attempted felony murder is a non-existent offense, the information fails to allege a cognizable criminal offense, and the district court was without jurisdiction to have accepted the plea of guilty. Accordingly, I do not believe the majority should have addressed the Crim.P. 11 advisement.

1. Moreover, because felony murder, itself, contains an attempt element under certain circumstances, one can conceive of an attempt to attempt to commit the underlying felony. In *Allen v. People,* 175 Colo. 113, 485 P.2d 886 (1971), we held that there can be no crime of an attempt to commit an attempt. "Perhaps philosophers or metaphysicians can intend to attempt to act, but ordinary people intend to act, not to attempt to act." *Id.* at 117, 485 P.2d at 888.